(No. 26519.—

JOHN E. NEEF *et al.*, Appellants, *vs.* THE CITY OF SPRING-
FIELD *et al.*, Appellees.

*Opinion filed September 21, 1942.*

HAROLD O. WERNER, for appellants.

HUGH J. GRAHAM, JR., City Attorney, and CLAYTON J. BARBER, Corporation Counsel, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

Appellants John E. Neef and Frances Neef are the owners of two vacant lots located at the northeast corner of the intersection of North Grand and Monument avenues in the city of Springfield. Appellant Anna Margaret Werner is the holder of an option to purchase these lots, and is desirous of erecting thereon a filling station.

North Grand avenue runs east and west. From North Grand avenue, Monument avenue extends north a distance of about three blocks. It is the main thoroughfare leading to Oak Ridge Cemetery and Lincoln's tomb from the south. Although there is a slight jog to the east, Monument avenue is really a continuation of First street. First street extends directly north from the State House to North Grand avenue. The improvement and beautification of First street and Monument avenue have occupied a prominent part in Springfield's city planning since 1924, when it was recommended by Myron H. West who was the head of a planning commission that surveyed the city. In recent years this improvement has taken tangible form by the paving of First street and Monument avenue, the erection of ornamental lamp posts, and the purchase and landscaping of the lot at the southeast corner of the intersection of First street and North Grand avenue, by the city of Springfield. The Springfield Civic Garden Association has also assisted in the project by planting elms along First street and Monument avenue from the State House to the entrance to Lincoln's tomb.

Between North Grand avenue and the State House there are occasional business properties along First street. At the southwest corner of the intersection of First street and North Grand avenue, there is a two-story building housing a tavern and beer garden. This building has been there for more than fifty years. It fronts on First street. Back of the tavern and fronting on North Grand Avenue is a shoe repair shop. South of the tavern on First street is a residence and next to it a bakery.

On the north side of North Grand avenue, there is a residence at the northwest corner of the intersection of North Grand and Monument avenues. Next to this residence on the west is a glass shop, a barber shop, and a confectionery. Continuing west there are five residences. The last building in the block is a grocery store. Proceeding east from Monument avenue on the north side of North Grand avenue, there is first the two vacant lots of the Neefs, then a small lunch counter. · On the next corner east in the same block there is a Piggly Wiggly store. Across the street south from the Piggly Wiggly store and at the southwest corner of the intersection of Second street and North Grand avenue, is a tavern.

On the west side of Monument avenue and north of North Grand avenue, there is a monument works located near the entrance to the cemetery. There is also a building housing a Lincoln souvenir stand. With the exception of the souvenir stand, the Piggly Wiggly store and the lunch counter, all of the commercial businesses above referred to are located in buildings whose use as commercial property antedates the formation of the Springfield city plan in 1924 and the passage of the Springfield zoning ordinance on July 28 of that year.

Under the zoning ordinance as originally enacted, the two lots owned by appellants were placed in an "A" residential classification or district. This classification permitted gasoline service stations. However, the zoning ordi-

nance was amended in 1930 so as to provide that gasoline service stations should not be allowed in "A" or "B" residential districts.

On September 4, 1940, appellants John Neef and Frances Neef executed an option to sell their lots to appellant Anna Werner for $3500. They subsequently petitioned the Springfield zoning board for a change in the classification of the lots from "A" residential to "C" commercial, so that appellant Werner could erect a filling station thereon. After due publication as required by statute, a public hearing was held on October 3, 1940. At that time no objectors appeared, and the zoning board voted to recommend to the council the change in classification as requested. When, however, the matter was brought before the city council for the purpose of amending the zoning ordinance, the board of managers of Oak Ridge Cemetery appeared and objected to the change. After these objections were heard, the city council refused to amend the ordinance. Appellants then filed this suit for the purpose of enjoining the city of Springfield and its officers from enforcing the zoning ordinance as applied to the Neef property.

The cause was referred to a master, who heard the evidence and made his report recommending that a decree be entered as prayed. The city objected to the report. The objections were sustained. A decree was entered dismissing the suit for want of equity. This appeal is prosecuted from that decree.

On the hearing before the master, it was shown that appellants' lots had a value as commercial property of $3500, and only $1200 as residential property. The city offered evidence tending to show that the erection of a filling station on plaintiffs' lots would depreciate the other property in the nighborhood to an even greater extent than the appreciation of appellants' property in the event it could be used for commercial purposes.

On the hearing before the master, the testimony covered a wide range. One of the city commissioners and the mayor were permitted to testify, giving their reasons for opposing the proposed amendment to the ordinance reclassifying appellants' property. Among other reasons given by them was the desire to preserve the beauty of Monument avenue. They further testified that the location of a filling station on appellants' property would constitute a traffic hazard because of the existing traffic conditions. It was also shown that there was much traffic on this street because of many funeral processions to the cemetery and pilgrimages to Lincoln's tomb. In their testimony they admitted that their chief concern was the preservation of the beauty of the street and the desire to carry out the general plan for preserving the Lincoln shrines in the city of Springfield. They further testified, however, that they also took into consideration property values, the character of the neighborhood and the general considerations relating to the proposed change in the zoning ordinance. Much of this testimony was wholly immaterial and incompetent.

The sole question involved in this case is whether or not the regulation of plaintiffs' use of their property imposed by the zoning ordinance is a valid exercise of the police power of the city. It has always been recognized in this State that the constitutional guaranties of private rights are subject to the qualification that they may be cut down by governmental agencies acting under the police power of the State. (*City of Chicago* v. *Rogers Park Water Co.* 214 Ill. 212.) Zoning ordinances have consistently been upheld on that ground. (*Rothschild* v. *Hussey,* 364 Ill. 557; *Koos* v. *Saunders,* 349 id. 442; *Forbes* v. *Hubbard,* 348 id. 166; *City of Aurora* v. *Burns,* 319 id. 84.) However, to justify an invasion of private rights as a valid exercise of the police power, it must be shown that the power is exercised for the preservation of the safety, health,

morals or general welfare of the public. (*Haller Sign Works* v. *Physical Culture Training School,* 249 Ill. 436.) In that case, we held that an act of the legislature prohibiting the erection of a structure of any kind or character within 500 feet of a public park or boulevard, for the purpose of placing advertisements of any kind or character thereon, was unconstitutional because the enactment of such a law was designed solely for the promotion of aesthetic purposes, and had no reasonable relation to the safety, health and morals of the public.

It is no objection, however, to a zoning ordinance that it tends to promote an aesthetic purpose, if its reasonableness may be sustained on other grounds. The question here then is whether or not, disregarding the evidence relating to the beauty of the neighborhood and the streets and other aesthetic purposes, the ordinance should be sustained on the grounds of public health, safety, morals or general welfare.

The first section of the City Zoning act, (Ill. Rev. Stat. 1939, chap. 24, par. 66; Ill. Rev. Stat. 1941, chap. 24, par. 73-1) recites that the zoning power is granted to municipal authorities "to the end that adequate light, pure air and safety from fire and other dangers may be secured, that the taxable value of land and buildings throughout the city, village or incorporated town, may be conserved, that congestion in the public streets may be lessened or avoided, and that the public health, safety, comfort, morals and welfare may otherwise be promoted."

It is undisputed in the evidence that although the value of appellants' lots would be increased if they could be used for commercial purposes, the erection of a filling station or any commercial building thereon will decrease the value of the other property in the neighborhood by an even greater amount. In other words, to permit appellants' lots to gain in value it is necessary for the entire neighborhood to lose and the city to suffer by the resulting loss in taxable

value. The prevention of such a loss by the city is one of the specific purposes for which the zoning power is granted, and is directly related to the public welfare. On this ground alone, we think the ordinance should be sustained. *Michigan-Lake Bldg. Corp.* v. *Hamilton,* 340 Ill. 284.

In *Rothschild* v. *Hussey, supra,* the court was asked to invalidate a zoning restriction of the village of Forest Park which distinguished between "A" and "B" commercial zones. Gasoline stations and garages were excluded from "A" zones along with twenty other trades, uses and industries. The plaintiff sought by *mandamus* to compel the municipal authorities to issue him a building permit for a filling station in a district classified as "A" commercial. Evidence was introduced that others in the district had improved their properties on the assumption that the district would remain in class "A"; that a gasoline filling station would be dangerous to the safety of school children passing the location daily; that it would increase fire insurance rates on adjoining property; that it would reduce property values on near-by real estate, and that its construction and operation would be detrimental to the public safety. In upholding the validity of the zoning restriction we said (p. 559) : "The power of a city or village to adopt comprehensive zoning laws is based upon the police power, and their prohibitive restrictions are valid if they bear a reasonable relation to the public comfort, morals, safety and general welfare. (*Koos* v. *Saunders,* 349 Ill. 442; *Forbes* v. *Hubbard,* 348 id. 166; *City of Aurora* v. *Burns,* 319 id. 84.) We have repeatedly held that these relative factors are determinative regardless of the fact that here and there some individual may suffer an invasion of his property. (*Forbes* v. *Hubbard, supra.*) The presumption is in favor of the validity of a zoning or other ordinance adopted pursuant to a legislative grant, and it is incumbent upon the property owner attacking it to affirmatively and clearly show its unreasonableness. (*Village of*

*Western Springs* v. *Bernhagen,* 326 Ill. 100; *People* v. *Village of Oak Park,* 266 id. 365.) When the reasonableness of the ordinance is challenged, the question for the court is not whether it thinks the ordinance wise, but whether it has a rational relation to the public health, morals, safety or general welfare. *City of Aurora* v. *Burns, supra; City of Carbondale* v. *Reith,* 316 Ill. 538."

The burden of proving the unreasonableness of the classification in this case is on appellants. That burden is not shifted by reason of the fact that the zoning board recommended a change. (*Behnke* v. *Village of Brookfield,* 366 Ill. 516.) Appellants' evidence which tends to show that the ordinance is unreasonable is to the effect that their property would be more valuable as commercial property than it is as residential, and that the property adjoining it on the east has been reclassified as commercial, since the passage of the original zoning ordinance. But the exercise of police power in any form will almost invariably reduce the value of rights of some individuals. The justification for the restriction is the greater benefit which accrues to the public as a whole. We have upheld zoning ordinances which operated to limit, to a greater or lesser extent, the potential value of an individual parcel of property. (*Michigan-Lake Building Corp.* v. *Hamilton, supra; Minkus* v. *Pond,* 326 Ill. 467; *Behnke* v. *Village of Brookfield, supra; Speroni* v. *Board of Appeals of the City of Sterling,* 368 Ill. 568; *City of Aurora* v. *Burns, supra.*) Appellants' contention that it is unreasonable to allow their neighbors' property a commercial classification, and deny the same classification of their property, cannot be sustained. This argument would lead to the conclusion that the next adjoining lot on the north would then, by the same logic, become entitled to commercial classification, and so on until the entire neighborhood was reclassified and commercialized. Further, the property is located at the corner of North Grand and Monument avenues, which is predom-

inantly residential. The problem of whether it is to be characterized by the residential area adjoining it on the north and facing it on the west and south or by the commercial area adjoining it on the east is certainly debatable and one to be answered by the city council and not by this court, so long as the city acts within its powers.

Appellants have wholly failed to show that the zoning ordinance of the city of Springfield is unreasonable in its application to their property, and the decree of the circuit court will be affirmed.

*Decree affirmed.*