(No. 32579.—

MILLER BROTHERS LUMBER COMPANY, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

Brown, Dashow & Ziedman, of Chicago, (Albert Langeluttig, of counsel,) for appellant.

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Sydney R. Drebin, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, which has been duly certified to this court by the circuit court of Cook County, involves the frequently recurring question of the validity of the Chicago zoning ordinance, as amended, in its application to an individual tract of land.

The city of Chicago enacted its zoning ordinance in July, 1923, and, by its provisions, a triangular area bounded by West Argyle Street on the north, the Milwaukee railroad right of way on the east, West Lawrence Avenue on the south, and North Lavergne Avenue on the west, was zoned for manufacturing use. Five years later, Peter Miller purchased four lots along the southern boundary of the area at the site now commonly known as 4918 West Lawrence Avenue, and started a lumber business. At the time he made his purchase, the Lawrence Avenue property was adjoined at the rear, or north, separated only by a platted alley, by four vacant lots facing on Gunnison Street, which were also within the above-described area. In 1932, the lumber business was incorporated, the Lawrence Avenue property was conveyed to the corporation and it has continued in business at that site. In December, 1942, the city of Chicago made extensive amendments to its zoning ordinance, with the result that the triangular area previously described was rezoned for single-family residence use, with the exception of the lots at the southern boundary facing on Lawrence Avenue which were rezoned for commercial use. The platted alley between Lawrence Avenue and Gunnison Street thus became the boundary line between the two uses.

Despite the change of zoning, the corporation, in 1946, purchased the vacant lots on Gunnison Street intending to expand its lumber business thereon by erecting additional buildings, bins, and sheds. In March, 1952, the corporation started this action in the circuit court of Cook County seeking a declaratory judgment that the ordinance, as

amended, is void in its application to the Gunnison Street lots. The complaint filed alleged that the city's action in rezoning the property from manufacturing to single-family residence use was unnecessary, capricious, unrelated to the public health, safety, morals or welfare, and that it contravened divers constitutional rights of the corporation in its property. The circuit court entered judgment adverse to the corporation's contentions and this appeal has followed.

In seeking reversal appellant assigns the following errors: (1) That the city council abused its legislative discretion in rezoning the Gunnison Street property in view of its highest and best use; (2) that the ordinance, as amended, deprives appellant of property without due process of law to the extent of the difference in its value for manufacturing use as compared to residential use, and, (3) that the amendment was unreasonable in that it inflicted financial injury upon appellant without tending in any way to benefit the public.

The evidence relating to these issues shows that the property here involved is in the southeast corner of the triangular area with the eastern boundary being the railroad right of way and the southern boundary being the alley between Lawrence Avenue and Gunnison Street. The railroad at this point is approximately sixteen feet above ground level, is fenced for many miles and has no commercial outlets or sidings in the immediate area. In the area zoned for single-family residence purposes there are ninety-two parcels of land, thirty-five of which have residences on them, and two of which have new residence foundations on them. There is no manufacturing within the area and but two business uses, one being a grocery store on Lavergne Avenue, and the other a small trucking company which is being operated from a garage at the rear of a residence on Argyle Street adjacent to the railroad track. Gunnison Street itself is an asphalt road with little but residential traffic and comes to a dead end at the railroad. Starting

from the tracks and moving west along the south side of Gunnison Street to Lavergne Avenue are located the four vacant lots here in controversy, which lie about two feet below road level, then follow eight frame residences interspersed with seven vacant lots. One witness estimated many of these dwellings to be about fifty years old but stated that they were in good repair and neatly kept, which facts are borne out by photographic evidence. On the north side of Gunnison Street, running from the tracks to Lavergne Avenue, are five vacant lots, a three-apartment brick building, two new residential foundations, and five frame residences. A witness testified that there are twenty-four families living in the residences on the block and that included in them were about sixteen children under eighteen years of age.

Evidence introduced by appellant concerning immediately surrounding areas indicates that both sides of Lawrence Avenue, from the west side of the railroad to Lavergne Avenue, are used exclusively for commercial and manufacturing purposes, included in which are appellant's lumberyard, two cement contractors, a shoe store, a dairy building now used for storage, a barbershop, a machine shop, a tavern, a factory making mining equipment and one making electronic parts. Lawrence Avenue itself is shown to be a busy thoroughfare which bears much automobile and truck traffic and a two-way electric bus line. On the east side of the railroad and south of Lawrence Avenue is located a large lumberyard adjacent to the railroad, while to the north, along the east side of the railroad, is located still another cement contractor, a dilapidated residence at the corner of Ainslie Street and Lamon Avenue where the owner sells black soil, and nearby on Lamon, a small grocery store. It was also shown that the Mayfair Pumping Station is located about two blocks south of Lawrence Avenue on the west side of the railroad track. With these exceptions, however, the evidence introduced shows

that the areas surrounding the property and the zoning area in question are almost exclusively used for residential purposes.

Harold B. Miller, general manager for appellant, testified as to the volume of the corporation's business, to its need for more storage space and facilities, and told of the difficulties engendered by the traffic congestion on Lawrence Avenue. He also described the manner in which his company planned to use the Gunnison Street property and how it would alleviate their problems. Both he and his father testified that when the Gunnison Street lots were purchased they did not actually know of the rezoning.

William H. Brinkman, a real-estate man with experience as a member of a zoning board of appeals, testified that he had conducted a survey of the area in question in 1939 to ascertain if it were possible to buy sufficient property to locate industry adjacent to the Milwaukee Railroad tracks. He did not, however, testify as to the results of his survey. He further testified that he had re-examined the area prior to testifying and had formed the opinion that the highest and best use for the Gunnison Street lots is for manufacturing purposes. It was also his opinion that the highest and best use, and proper zoning, for the whole triangular area from the railroad tracks to Lavergne Avenue is for manufacturing purposes and that such use would not prove detrimental to the surrounding areas. In both instances he based his opinion upon a study of the property, a study of the immediate and surrounding areas, and upon the general industrial development along the Milwaukee railroad tracks throughout the city of Chicago and into the northwestern suburbs. The witness was also of the opinion that the construction proposed by appellant would not be detrimental to the residence owners on Gunnison Street and that it would not affect existing residence values. He further evaluated appellant's vacant property on Gunnison Street at $13,000 for manufacturing purposes and at

$2600 for residence purposes. From other portions of the record we note that appellant paid approximately $2750 for the property.

The issue presented for decision is the reasonableness of the zoning ordinance, as amended, in its application to appellant's Gunnison Street property, and, in particular, whether the rezoning of that property from a manufacturing to a residential use bears any substantial relation to the public health, safety, morals or welfare. The right of a city to enact zoning ordinances as an exercise of its police power has long been established. It is also a familiar rule that this court is not a zoning commission and that all questions relative to the wisdom or desirability of particular restrictions in a zoning ordinance rest with the legislative bodies creating them. Where there is room for a fair difference of opinion concerning the reasonableness of a particular ordinance, we will not overthrow the considered findings of an impartial body which is presumably well equipped to decide the various issues involved. It is equally well settled that the governmental power to enact zoning regulations is not unfettered, and where the ordinance assailed bears no substantial relation to the public health, morals, comfort, safety or general welfare the ordinance cannot be sustained as a valid exercise of the police power. Whether the means employed have any real substantial relation to the public health, comfort, safety or welfare, or are essentially arbitrary and unreasonable, is a question which is subject to review by the courts. In determining whether a particular ordinance is, in fact, in the interest of the public welfare, each case must be determined upon its peculiar facts. Moreover, a zoning ordinance may be valid in its general aspects, and yet, as to a particular state of facts involving a particular parcel of real estate affected thereby, be so clearly arbitrary and unreasonable as to result in confiscation, thereby justifying the interposition of a court of equity to restrain the enforcement of the

ordinance. If the gain to the public is small, we have said, when compared with the hardship imposed upon individual property owners, no valid basis for an exercise of the police power exists. The cases announcing these principles are legion but chief among them are *Forbes* v. *Hubbard,* 348 Ill. 166; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207; *Harmon* v. *City of Peoria,* 373 Ill. 594; *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321.

Considering the facts of this case in the light of these established principles, we are of the opinion that the city was fully justified in rezoning, from a manufacturing to residential use, the area containing the Gunnison Street property. The evidence shows that the area was zoned for manufacturing use for a period of nineteen years, yet during that time, and even before the existence of a comprehensive zoning ordinance, none of the property in the area was ever put to that use. On the other hand, it has been, and is, devoted almost exclusively to residential use, a factor which no doubt prompted the rezoning amendment in 1942. An examination of the plats and charts in evidence supports the observation of the trial court that the area is a compact, homogeneous section which lends itself to zoning as a single area and for a single purpose. Appellant seeks to minimize the quality of the residences therein, but other evidence and photographs show them to be in good condition and to be typical residences. It is quite obvious, too, that the surrounding properties are, with few exceptions, being put to residential use. Considering these factors collectively, it must be said that reasonable grounds existed when the city council exercised its legislative discretion and rezoned the area to conform to its use. That the restriction of an area for residential use has a substantial relation to the public welfare needs little discussion, for by such a regulation the property owners are protected from uses which reduce values, create hazards, undue vehicle traffic,

noises and the like. Nor has appellant introduced any evidence that the area, since the passage of the 1942 amendment, has changed to such an extent that the ordinance no longer tends to promote the public welfare. Indeed, the reverse is shown by the record, for new owners, who have a right to rely on the residential classification, have come into the area. It is only the appellant itself which has bought into the area and now seeks to invade the established rights of others. On the record thus made, we cannot say that the restriction as applied to appellant's property is not a proper exercise of the police power and that it does not have a substantial relation to the welfare of other persons living and owning in the area.

In urging that the rezoning was capricious and unreasonable, appellant argues strongly that the area in question should be characterized by the commercial and manufacturing uses which exist on Lawrence Avenue, and zoned accordingly. It is a commonplace principle that zoning classifications must begin and end somewhere and the practice of zoning streets lying along the edges of residential districts for business and commercial purposes is a recognized method of zoning. (*Forbes* v. *Hubbard,* 348 Ill. 166; *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265.) Although the line of demarcation is sometimes drawn arbitrarily, it is by such a device that barriers or buffers are created for the protection of the residential areas which lie behind it. Proximity of property to such a line of demarcation is, of itself, insufficient to show that the ordinance creating it is invalid or discriminatory as to such property. (*Neef* v. *City of Springfield,* 380 Ill. 275; *Evanston Best & Co. Inc.* v. *Goodman,* 369 Ill. 207.) The physical aspects of the properties here involved make these tenets appropriately applicable.

Relying upon language contained in *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321, and *Phipps* v. *City of Chicago,* 339 Ill. 315, appellant urges

that the city's action, in this case, of rezoning the area for residence purposes was capricious and unreal in view of the close proximity of the Milwaukee railroad. It is contended that proper zoning demands that property adjacent to railroads be zoned for manufacturing use. This argument itself becomes unrealistic when one considers that the city of Chicago has hundreds of miles of railroad tracks within its limits leading to the very heart of the "loop" area. Numerous other factors, peculiar to a metropolitan area, preclude the arbitrary zoning classification suggested by appellant and it must be concluded that such aspects of zoning must, particularly, be made to depend upon the facts of each given case. The facts of this case show that the area in question had not attracted manufacturing during the nineteen years it was zoned for that purpose, nor has the railroad been adapted to serve industry in that area. From the facts, we conclude that the city council did not abuse its legislative discretion in this respect.

Viewing both arguments of appellant, we believe it is manifest that they raise only questions which, at best, are debatable. In such cases the decision of the zoning authority is controlling and this court will not interfere.

Particular stress is placed by appellant on the contention that the highest and best use of the subject property is for manufacturing and that unless such use is permitted, appellant will suffer a substantial financial loss. Although appellant's property may be more valuable if devoted to business, the record indicates that the property is still worth exactly what was paid for it. The alleged fact that it is five times as valuable for manufacturing uses as it is for residential purposes is not decisive. (*Evanston Best & Co. Inc.* v. *Goodman,* 369 Ill. 207; *Rothschild* v. *Hussey,* 364 Ill. 557.) The cases last cited indicate that while the extent to which property values are changed by a zoning ordinance is a proper consideration in determining the validity of the ordinance, the profit that would accrue to

individual property owners, if zoning restrictions were removed, must be weighed against the detriment to public welfare that would ensue. One property owner should not be permitted to increase the value of his property at the expense of his neighbors. However, if the gain to the public is small when compared with the hardship imposed upon individual property owners, there exists no valid basis for the exercise of the police power. _(Reschke_ v. _Village of Winnetka,_ 363 Ill. 478.) Where, however, it is shown that the restrictions imposed by such a law protect the health, safety and welfare of the public, they must be sustained, even though private interests may be somewhat impaired.

To remove the zoning restriction placed upon appellant's Gunnison Street property would be to permit an encroachment for a use that has not been necessary in the area for the thirty years that the property has come under zoning regulations. The protection afforded the residential area by the buffer zone created by the zoning of the property on Lawrence Avenue would be dissipated and once an inroad has been made, it would, no doubt, occasion requests for further modification in the entire area at the pleasure of individual owners and at the expense of all the residence owners as a whole. The individual whose use of his property may be restricted is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration. (_City of Aurora_ v. _Burns,_ 319 Ill. 84.) There is no showing made by appellant here, that the restriction on its Gunnison Street property is so unrelated to the public good, that we would be justified in upsetting the comprehensive zoning plan the city has adopted. The evidence produced shows only debatable questions which must be resolved in favor of the municipal authorities and a desire of appellant to use the property

for a purpose other than that permitted by the zoning law which was in full force when it purchased the property. These are not sufficient legal reasons to hold the ordinance invalid.

For the reasons indicated, it is our conclusion that the judgment rendered by the circuit court of Cook County in this case was correct, and it is therefore affirmed.

*Judgment affirmed.*