(No. 33405.—

La Salle National Bank, Trustee, Appellee, *vs.* The City of Chicago, Appellant.

*Opinion filed May 20, 1955.*

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, and HARRY H. POLLACK, of counsel,) for appellant.

NATHAN SCHWARTZ, FOSTER SCHLUTZ, FRANCIS X. GALLAGHER, and HARRY I. RUBENSTEIN, all of Chicago, (FRED HERZOG, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Appellee, La Salle National Bank, as trustee, brought an action against the city of Chicago in the circuit court of Cook County for a declaratory judgment and an injunction in aid thereof. The relief sought was that the city's amendatory zoning ordinance of December 3, 1942, as applied to appellee's property be declared void; that the zoning ordinance of April 5, 1923, be declared as applying to the subject premises; that sections 40-8, 40-13, 127-5 and 156-5 of the municipal code of Chicago, requiring frontage consents, be held inapplicable to the property; that appellee be permitted to build a gasoline service station on the premises; that defendant and its officers issue the necessary permits therefor and be restrained from interfering with the proposed uses. The trial court, after a hearing before a referee, sustained his findings and recommendations, overruled exceptions thereto and entered a judgment order granting all of the relief sought. By its order the court retained jurisdiction to carry out the judgment and certified that the cause involved the validity of a municipal ordinance and that the public interest required a direct appeal to this court.

The property involved consists of vacant lots located at the northeast corner of the intersection of Birchwood Avenue and Sheridan Road in the city of Chicago, having an approximate frontage of 162 feet on Sheridan Road

and 150 feet on Birchwood Avenue. It was acquired by appellee on January 10, 1952. Sheridan Road is a main traffic artery running north from Chicago's downtown district to the north city limits. Birchwood, an east-and-west street, intersects Sheridan Road at right angles and continues eastward for about two blocks where it comes to a dead end at Lake Michigan. Sheridan Road is heavily traveled, carrying both northbound and southbound traffic. The maps in evidence show that it is 100 feet wide between property lines. Birchwood Avenue is 66 feet wide. The streets south of Birchwood intersecting Sheridan Road and continuing eastward to the lake (or thereabouts) are Fargo, Jarvis, Sherwin, Chase, Touhy, Estes, Greenleaf, Lunt, Morse, Farwell, Pratt, Columbia, North Shore, Albion, Loyola and Devon, in that order. Most are dead-end streets east of Sheridan. The first street north of Birchwood is Howard. Like Birchwood it crosses Sheridan Road and comes to an end at the lake. The next two streets to the north intersecting Sheridan Road are Jonquil Terrace and Juneway Terrace. They intersect from the west but do not cross Sheridan Road. At Juneway Terrace, Sheridan Road turns northeastward and proceeds but a short distance to the north city limits. Extending south from this portion of Sheridan Road is Eastlake Terrace, a street only two blocks long. It extends south as far as Birchwood and parallels Sheridan Road to the west. The entire area between Devon (6400 north) and the north city limits (7900 north) is known as Rogers Park.

A comparison of the 1923 and the 1942 zoning ordinances shows that the 1923 enactment provided for four use classifications or districts: residence, apartment, commercial and manufacturing. Under the 1923 act both sides of Sheridan Road between Devon Avenue and Touhy Avenue, a distance of about one mile, were zoned for commercial uses. Between Touhy Avenue and Fargo Avenue, a distance of four blocks, the property on both sides of

Sheridan Road was zoned for apartments. From Fargo Avenue to the city limits on the north, a distance of about five blocks, the property on both sides was zoned commercial. Commercial uses included gasoline filling stations, and the subject property was zoned commercial by the 1923 ordinance. All of the property east of Sheridan Road to Lake Michigan between Devon Avenue on the south and the city limits on the north, a distance of 22 blocks, was zoned for apartments under the ordinance, the only exception being property on Albion which was zoned for single family residences. The 1942 ordinance provides for nine use classifications: single family residence, duplex residence, group houses, apartment houses, specialty shops, business, commercial, manufacturing, industrial and motor freight terminal. By the latter act, both sides of Sheridan Road from Fargo to Birchwood, a distance of one block, were changed from commercial to apartment use. The west frontage of Sheridan Road from Birchwood to Howard Street was changed from commercial to business use, and the east side of the same block in which the subject property is located was changed from commercial to apartment use. Both sides of Sheridan Road from Howard Street north to the city limits were changed from commercial to apartment use with the exception of some land at the northeasterly end of Sheridan Road at the city limits which was changed from commercial to business use. The property on both sides of Sheridan Road between Touhy and Fargo continued in its apartment classification; and that between Albion and Touhy was changed from commercial to business use, while that between Devon and Albion remained commercial. All of the property east of Sheridan Road between Devon and the north city limits retained its single family and apartment classifications. Under both the 1923 and 1942 ordinances, commercial and business classifications obtained on the cross streets west of Sheridan Road; but on none of the cross streets east of

Sheridan Road under either ordinance, were the uses other than single family residence or apartment.

Evidence was received as to property uses along both sides of Sheridan Road from Devon on the south to the city limits on the north, as well as the uses obtaining east of Sheridan Road to the lake and on some of the cross streets to the west. On the east side of Sheridan Road in the block in which the subject property is located, the only building is a large apartment in the middle of the block containing 36 units. The subject property as well as the property at the southeast corner of the intersection of Howard Street and Sheridan Road is vacant. Directly across Sheridan Road to the west of the subject property is a gasoline filling station. North from said station to Howard Street are vacant lots and some stores. North of Howard on the east side of Sheridan Road to the city limits the property is entirely improved by residences and apartments with the exception of two legal nonconforming uses, a restaurant, and a tailor shop in the basement of an apartment building. The entire area east to Lake Michigan north of Howard is devoted to residences and apartments, including the property on both sides of Eastlake Terrace from Sheridan Road south to Birchwood. On the west side of Sheridan Road between Howard Street and Jonquil Terrace are apartments and two stores, and between Jonquil Terrace and the city limits are apartments, residences and two gasoline stations. In the entire square block in which the subject property is located, bounded by Eastlake Terrace on the east, Sheridan Road on the west, Birchwood Avenue on the south and Howard Street on the north, the properties are all improved by residences and apartments with the exception of the two vacant properties heretofore mentioned, one of which is the subject property.

To the south of the subject premises from Birchwood Avenue to Sherwin, a distance of three blocks, the prop-

erty on both sides of Sheridan Road is devoted exclusively to apartments and residences, with the exception of two residences on the west side of the street between Birchwood and Fargo, which also contain offices. The entire area east to the lake is also exclusively residential. South of Sherwin Avenue for a distance of $1\frac{1}{2}$ blocks on the east side of Sheridan Road the uses are an apartment building and an apartment hotel with stores on their main floors and a parking lot and a residence. The next $2\frac{1}{2}$ blocks south on the same side of the street are devoted to a city park which continues south as far as Greenleaf Avenue. The uses on the east side of Sheridan Road for the nine blocks from Greenleaf to Devon Avenue consist of apartment buildings and apartment hotels with main floor stores, apartment buildings with no stores, residences, stores, a theater, two gasoline stations, and a bus station. South of Sherwin Avenue on the west side of Sheridan Road for the two blocks south to Touhy Avenue the uses are almost exclusively residential, the only exceptions being a vacant property and a convalescent home and rooming house. From there south to Devon Avenue the uses include residences, apartments, stores, and three gasoline filling stations. It appears that there are more commercial and business uses on the west side of Sheridan Road from the city limits south to Devon than there are on the east side. For example there are only two gasoline stations on the east side of Sheridan Road in the entire distance and those are located at the far south end of the district. On the west side of the street there are seven gasoline filling stations located at various points from the south to the extreme north end of Sheridan Road near the city limits.

Appellee alleged in its complaint that it has a substantial investment in the subject land and that the property has little or no value if restricted for use by apartments or residences. It further alleged that the property is in demand for use as an automobile filling and service station.

No proof was offered by appellee to sustain these allegations. The defendant, by answer, denied these allegations, and there is nothing in the record which shows how much was paid for the premises or that the land has greater value if used for a gasoline station than it would have if used for apartments or residences. There is no testimony of any effort to sell the land for residence purposes. There is nothing in the proof from which this court might conclude that the highest and best use of the land is for the purpose desired by appellee or that the operation and effect of the 1942 ordinance on the subject premises is confiscatory. There being a total failure of such proof by the plaintiff, the ordinance of 1942 cannot be held to be confiscatory. (*Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291, 296-297.) Though it did not have the burden of proof, the city introduced the testimony of three qualified witnesses who testified that the highest and best use of the land was for apartments. There was also testimony from surrounding property owners as to the value of their properties and some proof that the values would be diminished if a gasoline station were located on the subject premises.

To establish its contention that the zoning classification of the 1942 ordinance as applied to the subject property is arbitrary and unreasonable, appellee has been content to introduce proof of the nature of the uses of the surrounding property, particularly the commercial and business uses existing across the street on the west side of Sheridan Road in the block in which the subject property is located. From this proof, coupled with the fact that the ordinance of 1942 maintained business uses in the block on the west side of the street but changed the classification on the east side from commercial to apartment use, appellee seeks to draw the conclusion that the ordinance of 1942 is arbitrary and unreasonable as applied to its property. In sustaining appellee's position the trial court found that the subject prop-

erty is not characterized by the residential area to the east but rather by the business uses on the opposite side of Sheridan Road. The evidence does not sustain and we cannot agree with this conclusion.

A decision of this case presents no new legal problems. It requires only the application of settled rules of law to the facts. The general rules of law applicable to zoning cases are so well established and have been so often reiterated by this court that for the sake of brevity they will not be repeated here. Suffice it to say that in determining the validity or invalidity of a given zoning classification, the question as to whether or not it is in conformity with surrounding existing uses and the zoning classification of nearby property is considered of paramount importance. (*Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162, 169-170; *Trust Company of Chicago* v. *City of Chicago,* 408 Ill. 91, 99-100; *Galt* v. *County of Cook,* 405 Ill. 396, 404; *Zadworny* v. *City of Chicago,* 380 Ill. 470, 477.) This is especially true where there is no evidence of the extent to which property values are diminished by the restrictions involved and therefore no necessity of comparing the gain to the public with the hardships imposed upon the individual property owner. A careful examination of the record in this case leads to the conclusion that it can reasonably be said that the subject premises are part of a compact, homogeneous residential neighborhood extending eastward from Sheridan Road to Lake Michigan. It also fairly appears that prior to the passage of the amendatory ordinance of 1942, property on the east side of Sheridan Road in the vicinity of the subject premises had developed differently from that on the west side. For example, although the entire block on the east side of Sheridan Road containing the subject premises was available for commercial development under the 1923 ordinance, no commercial uses whatever took place in the nineteen years the ordinance was in effect. Instead, an apartment

building was built in the middle of the block and the two corner properties remained vacant. By way of contrast the property in the same block on the west side of Sheridan Road was improved with a gasoline station and stores. The changes made in the zoning law in 1942 fairly reflect these conditions as well as the conditions and developments to the north and east.

Appellee relies principally on the case of *Forbes* v. *Hubbard,* 348 Ill. 166, to sustain its contention that there is no justification for zoning property on the east side of Sheridan Road for apartments and that directly across the street for business uses. In that case under the particular facts and circumstances there involved, it was held that dividing lines should avoid making one side of a main artery of travel purely residential where the opposite side is used for business property and has established its character as such. However proper the decision in the *Forbes case* may have been upon the facts, it is not to be regarded as establishing any hard and fast rule as to the location of dividing lines along streets. (*Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291, 296.) It is also true, as observed in the case last cited, that some physical features of a street such as width, gradient, and its utilization by various means of transportation may make it desirable, reasonable and best for public safety and convenience that one side be zoned for residential purposes and the other side for commercial uses. It cannot be said that the fixing of zoning lines with a different classification on either side of such boundary line renders limitation on use of the property near the boundary line in a more restricted district unreasonable and void. (*Wesemann* v. *Village of La Grange Park,* 407 Ill. 81.) Considering the width and character of Sheridan Road and the traffic it carries, we are not prepared to say that it was arbitrary and unreasonable to provide different zoning classifications for opposite sides of the street, especially in view of the use developments

heretofore related which show that the properties to the north, south and east of the subject premises are devoted almost entirely to residential uses. As often noted, zoning lines must begin and end somewhere and the decision of each case must depend on its particular facts. Where the most that can be said of the question whether property should be characterized as residential or commercial is that it is fairly debatable, it is a question to be answered by the city council and not by the courts. (*Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291; *Wesemann* v. *Village of La Grange Park,* 407 Ill. 81; *Neef* v. *City of Springfield,* 380 Ill. 275.) The presumption was in favor of the validity of the 1942 amendatory zoning ordinance. (*Neef* v. *City of Springfield,* 380 Ill. 275.) Appellee had the burden of proving that the ordinance in question as applied to its property was clearly arbitrary and unreasonable and bore no substantial relation to the public health, safety, comfort, or moral or general welfare. It is our opinion that the case as made by appellee falls short of establishing these conclusions.

Since we are of the opinion that the zoning ordinance of 1942 is valid, as applied to appellee's property, it becomes unnecessary to discuss the further question of validity of the frontage consent ordinances. The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*