(No. 33773.—

JAMES A. MAHONEY *et al.*, Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

John C. Melaniphy, Corporation Counsel, of Chicago, (L. Louis Karton, and Sydney R. Drebin, of counsel,) for appellant.

McCarthy, Toomey & Reynolds, of Chicago, (John E. Toomey, and John M. Kaveny, of counsel,) for appellees.

Mr. Justice Daily delivered the opinion of the court:

This is an appeal by the city of Chicago from a declaratory judgment of the circuit court of Cook County holding the city zoning ordinance, as amended, unconstitutional and void insofar as it affected certain property belonging to appellees. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

Appellees are the owners of three adjoining lots located at the southeast corner of Laramie Avenue and Jackson Boulevard and have an opportunity to dispose of them to a purchaser who desires to utilize the site for an undertaking establishment. As situated, the lots are in a district zoned for apartment use, said district being bounded on the north by the alley just south of Madison Street, on the east by the alley just west of Cicero Avenue, on the south by the alley just north of Harrison Street, and on the west by Central Avenue. Over all, the distance between Madison and Harrison is eight blocks, and appellees' lots are located in the center of the district. Within the district above described, the lots along the west side of Laramie are zoned for business use for the full distance between Harrison and Madison, thus we have the situation where Laramie is zoned for apartment use on the east side and for business on the west side. Section 8 of the city's zoning ordinance,

as amended in 1942, prohibits the operation of an undertaking establishment in an apartment district; section 10 permits their operation in a business district.

By their complaint for declaratory judgment, appellees alleged that the limiting of their property to an apartment use, while designating identical property located on the opposite side of the street for business, is an unreasonable and discriminatory exercise of the police power which bears no relation to the public health, safety, morals or welfare, and which serve to deprive them of their property without due process of law. The city denied such allegations and the trial court thereafter heard extensive evidence all of which bore upon the question of whether the divergent zoning classifications on the two sides of Laramie were reasonable and related to the public good. At the conclusion of the hearing, however, the court predicated its judgment that the ordinance was void in its application to appellees' property on the ground that the city zoning ordinance, as amended in 1942, effected an arbitrary and illegal classification when it excluded undertaking establishments from apartment districts.

We find nothing unreasonable in the provisions of the zoning ordinance classifying hotels, hospitals, nursing homes, schools, clubs, libraries, museums and certain other uses as permissible in an apartment district but permitting funeral homes to be located only in a business district. We consider the matter of locating funeral homes to be within the legislative discretion, and the propriety of such action to be a debatable question for determination by the city council and not by this court. *La Salle Nat. Bank* v. *City of Chicago*, 6 Ill.2d 22.

There remains for determination the question of whether the court's finding that the ordinance was unreasonable and void in its application to appellees' property may be sustained on the ground that the city improperly exercised its police power when it zoned the east side of Laramie for

apartment use while zoning the west side for business use. There is no dispute as to the facts of the case, the sole problem being what zoning principles are applicable. The west side of Laramie, between Madison and Harrison, is almost exclusively devoted to business uses, among which are included an auto sales agency, repair shop, beauty and barber shops, taverns, grocery stores, a laundry, a gasoline station and other retail shops. Appellees emphasize that the corner directly across Laramie to the west of their property is used as a gas station, while the corner to the northwest, or diagonally across from their lots, is improved with a supermarket grocery. On the east side of Laramie, except for the extreme corner lots at Madison and Harrison, respectively, the land is either vacant or devoted to various types of residential uses, mostly of recent construction. As situated, these properties are a part of a compact residential area which exends to the east for a distance of three blocks.

To sustain their contention that the diverse zoning on the two sides of Laramie is unreasonable and confiscatory as to their property, appellees rely upon *Forbes* v. *Hubbard*, 348 Ill. 166, *People ex rel. Joseph Lumber Co.* v. *City of Chicago*, 402 Ill. 321, *Braden* v. *Much*, 403 Ill. 507, *Northern Trust Co.* v. *City of Chicago*, 4 Ill.2d 432, and *Petropoulos* v. *City of Chicago*, 5 Ill.2d 270, which, in varying degrees, have applied the principle that in zoning some types of territory, a dividing line should not be fixed in such a way as to make one side of a main artery of travel purely residential where the opposite side is used for business property and has established its character as such. While we are of the opinion that there are many factual distinctions between the present case and those which led to the decisions relied upon, it is sufficient to point out that this court has held in *La Salle National Bank* v. *City of Chicago*, 6 Ill.2d 22, and *Mundelein Estates, Inc.* v. *Village of Mundelein*, 409 Ill. 291, that the *Forbes* decision "is not to be regarded as establishing any hard and fast rule

as to the location of dividing lines along streets." In each of the cases last cited it was held that it was not unreasonable to have different zoning classifications on either side of the streets there involved.

The record in this cause shows that both sides of Laramie in the area in question were originally zoned for commercial use by a comprehensive zoning ordinance adopted by the city in 1923. After a nineteen-year period in which the property on the east side of Laramie failed to develop commercially, that side of the street and the area adjoining it on the east were rezoned for duplex residence use; because of existing uses and the adoption of refinements in zoning classifications, the property on the west side of Laramie was changed to its present business classification. In 1948, the classification of the district, exclusive of the property on the west side of Laramie, was lowered to apartment use. Since 1942 then, Laramie has been the line of demarcation between the business and residential areas, and the evidence shows that, under the protection of such barrier, the area to the east has experienced a rapid and continuing development for residence, duplex and apartment purposes. Based upon the axiom that zoning must begin and end somewhere, it has become a recognized method of zoning to cause streets to serve as the line of demarcation between higher and lower use districts. (*Miller Bros. Lumber Co.* v. *City of Chicago,* 414 Ill. 162; *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265.) With regard to such method it is held that mere proximity to the line of demarcation is, of itself, insufficient to show that the ordinance creating it is invalid or discriminatory as to such property. (*Wesemann* v. *Village of La Grange Park,* 407 Ill. 81.) Here appellees base their claim of unreasonableness largely upon the circumstance that property across the dividing line has a different classification. On the other hand Laramie Avenue constitutes a logical physical barrier between the two use districts. If the restrictions on the

east side of the street were to be removed as to appellees' property, the business area on the west side would be allowed to expand into the residential area, even though the record shows that such expansion is not necessary. In such a manner the protection afforded to the residential area by making Laramie the line of demarcation would be dissipated and the way opened for further encroachments which, in time, could defeat the purpose of the residential restrictions.

We have held, too, that traffic considerations may sometimes justify different zoning classifications on either side of a street. The evidence here is that both Laramie Avenue and Jackson Boulevard are heavily traveled arteries of traffic and that both are utilized by public bus transportation. We are not told, however, in what manner this should affect or control the zoning of nearby property. It may well be that the public safety and convenience will best be served by keeping the congestion which normally attends a business zone from the residential areas.

Taking into consideration the exclusive residential development which the current zoning classification has effected to the east of Laramie, together with the evidence of traffic conditions, we find no firm basis to say that the city acted arbitrarily or unreasonably when it zoned the two sides of the street differently. This view is strengthened by photographic evidence introduced by both parties which shows a remarkable contrast in the appearance and condition of the opposite sides of the street. One side shows a typical business development; the other a typical and desirable residential area. A change of zoning cannot be justified simply because certain individuals want it, but only because the public welfare demands it. (*Dunlap* v. *City of Woodstock*, 405 Ill. 410.) It has also long been held that the judgment of municipal authorities with reference to zoning is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public good, and where there is room

for a legitimate difference of opinion concerning the reasonableness of a particular ordinance the finding of the legislative body will not be disturbed. (*Jacobson* v. *Village of Wilmette*, 403 Ill. 250.) Under the evidence presented in this record, we think the most that can be said of the question of whether appellees' property should be characterized as business or residential apartment is that it is fairly debatable and is a question to be resolved by the city council and not the courts. (Cf. *La Salle National Bank* v. *City of Chicago*, 6 Ill.2d 22.) It is our opinion that appellees have failed to sustain their burden of proving that the ordinance, as it applies to their property, is arbitrary and unreasonable, or unrelated to the public welfare; thus we find no basis to disturb the legislative judgment of the city.

As a further basis for the invalidity of the ordinance appellees argue at length that their property would be more valuable if zoned for business purposes. While the extent to which property values are changed by zoning regulations is a proper consideration in determining the validity of the regulation, the gain that would accrue to individual property owners if the zoning restrictions were removed must be weighed against the detriment to the public welfare that would result from such action. If the gain to the public is small when compared with the hardship imposed upon individual property owners, no valid basis for an exercise of the police power exists. Where, however, it is shown that the restrictions imposed by such a regulation protect the health, safety and welfare of the public, they must be sustained even though private interests are to some extent impaired. (*Evanston Best & Co.* v. *Goodman*, 369 Ill. 207, 211; *Neef* v. *City of Springfield*, 380 Ill. 275.) In this case appellees have not sustained their burden of showing that the zoning of their property is arbitrary or unreasonable, or that it has no relationship to the public good. This being so, the profit which appellees might rea-

lize through a change of zoning, must give way to the public benefits to be realized by. leaving the zoning unchanged.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*