(No. 35970

THE COSMOPOLITAN NATIONAL BANK OF CHICAGO *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed May 19, 1961.—Rehearing denied September 20, 1961.*

John C. Melaniphy, Corporation Counsel, of Chicago, (Marsile J. Hughes, Sydney R. Drebin, Rita Ivy Epstein, and Edward E. Plusdrak, Assistant Corporation Counsel, of counsel,) for appellant.

Irving Goodman, of Chicago, for appellees.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from a declaratory judgment holding the zoning ordinance of the city of Chicago void as applied to certain property of plaintiffs. The appeal is taken directly

to this court, the trial judge having certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal.

The property in question is located on the east side of Jersey Avenue in the city of Chicago. The premises have a frontage of 50 feet on Jersey Avenue and a depth of 139.98 feet. The premises are approximately 6,999 square feet in area and do not have any building thereon. Plaintiffs desire to erect on the premises a two-story town house containing five apartments with five rooms each. Under the 1957 comprehensive amendment to the Chicago zoning ordinance, the area within which the subject property is located is zoned as "R 3, General Residence District." Among the uses permitted under this classification are multiple-family dwellings. However, the minimum lot-area requirements of the ordinance applicable to an R 3 district require not less than 2,500 square feet of lot area per dwelling unit. Since the subject property is 6,999 square feet in area, this requirement would limit the property to two dwelling units, and plaintiffs were advised by the zoning administrator's office that the city would not issue a permit for the construction of more than two apartments on the premises. Thereafter plaintiffs instituted this proceeding to declare the restriction of the zoning ordinance void as applied to their property. The trial court entered an order declaring the zoning ordinance of the city of Chicago void as applied to the subject premises and directing that the plaintiffs be given a permit to erect thereon a two-story town house containing five five-room apartments.

This case differs from the typical zoning cases with which we are constantly confronted. The difference is occasioned by the fact that the 1957 zoning ordinance of the city of Chicago adopts, at least with respect to residential districts, an approach substantially different from that embodied in earlier zoning ordinances. In previous ordinances, the distinction between residential districts was based pri-

marily upon the types of structures and the number of dwelling units per structure permitted under the respective classifications. The present Chicago ordinance, in contrast, adopts a method of classification whereby the various residential districts are distinguished from each other not so much by the uses or types of structure permitted, as by differences in the intensity of the use of the lot area. The ordinance provides for eight different residential districts, of which the first two are restricted to single-family residences. The remaining six residential districts, starting with R 3, all permit single-family, two-family, and multiple-family dwellings, but differ from each other with respect to the permissible intensity of lot occupation. One of the devices adopted by the ordinance to control the intensity of lot occupation is the minimum lot-area restriction, which varies with the zoning classification. For example, in an R 3 district, the minimum lot area is 2,500 square feet per dwelling unit, while the minimum lot area in an R 4 district is 900 square feet per dwelling unit.

Thus, this is not the typical zoning litigation in which a property owner objects to the use restrictions that have been imposed upon his property by a zoning ordinance. Here the use to which plaintiffs wish to devote their property is a permissible use under the applicable zoning classification. It is not the use restrictions of the ordinance, but the size of their property, together with the minimum lot-area requirements of the ordinance, that prevents plaintiffs from using their property as they desire. We do not understand plaintiffs to contend that the requirement of 2,500 square feet of lot area per dwelling unit is *per se* invalid or beyond the authority of the city to enact, but rather that it is unreasonable and unconstitutional as applied to their particular property. In their brief, plaintiffs acknowledge that the requirement is generally reasonable as applied to residences, but assert that, when applied to multiple-dwelling buildings, it may or may not be reasonable, depending upon the neigh-

borhood, the adjoining properties, and traffic conditions. The defendant city, on the other hand, seems to contend that the character of the neighborhood and the uses of the surrounding property are not material to the issues in this case. This argument is based on the assumption that the appropriateness of the R 3 classification is not in issue, since the proposed use is permissible under that classification; that the only issue is as to the validity of the 2,500 square foot minimum lot-area requirement; that this requirement is general in nature, applying uniformly to all R 3 districts within the city, and can be challenged successfully only by showing that the requirement itself has no reasonable relation to the public health, welfare and safety, without regard to the specific conditions applicable to the particular property involved. In other words, the defendant seems to contend that, while the use restrictions of an ordinance may be challenged in their application to a particular piece of property, the minimum lot-area restriction here involved can be attacked only by showing that it is generally unreasonable, and that the particular circumstances of the subject property and the surrounding area have no bearing on the case. This argument ignores the fact that, under the present ordinance, the minimum lot area requirement is just as much an integral part of the R 3 classification as are the use provisions. In our opinion, a property owner may challenge the validity of the lot-area restriction as applied to his particular property, and the character of the neighborhood and the uses of the surrounding property are pertinent to the inquiry.

The property is located on the east side of Jersey Avenue in the block between Bryn Mawr Avenue and Hollywood Avenue. Jersey Avenue is an extension of Kedzie Avenue, a through traffic street in the city of Chicago, and is 66 feet wide. The record discloses a distinct difference in the zoning classification and the character of the buildings on the two sides of Jersey Avenue in the vicinity of the property

in question. On the west side of Jersey, across from plaintiffs' property, the area has an R 4 residential classification and is largely built up with multiple-unit apartment buildings and town houses, with a sprinkling of commercial establishments which appear to be legal nonconforming uses antedating the present zoning classification. On the other hand, the east side of Jersey Avenue for a distance of one-half mile north of Bryn Mawr is zoned R 3 residential with the exception of the property at the corner of Jersey and Bryn Mawr, which is zoned commercially and is occupied by a real-estate office. Not only is the east side of Jersey zoned R 3, but it is largely built up with single-family residences. Immediately south of plaintiffs' property are seven consecutive single-family dwellings, followed by two vacant lots and then the real-estate office. These single-family houses were built within the last two or two and one-half years immediately preceding the trial and were sold for $20,500 each. The inference from the record is that they were built since the enactment of the 1957 zoning ordinance and were purchased in reliance upon the R 3 zoning classification. Immediately to the north of the subject property is a garage, which was built in 1925 and is a nonconforming use. North of the garage are two residences, followed by a one-story synagogue, which is at the corner of Jersey and Hollywood avenues. North of Hollywood Avenue, the east side of Jersey Avenue for a considerable distance is zoned R 3 and is built up with single-family dwellings.

There is a presumption in favor of the validity of a municipal zoning ordinance, and the burden is upon the party attacking the validity of the ordinance to prove by clear and affirmative evidence that it is unreasonable and capricious and bears no reasonable relation to the public health, morals, safety and welfare. Where the most that can be said is that the reasonableness of the ordinance is fairly debatable, the decision of the municipal authorities must be upheld and the trial court is not justified in sub-

stituting its judgment for that of the municipal authorities. It is upon these principles that plaintiffs' case against the application of the ordinance to their property must be evaluated.

The record shows that, although the west side of Jersey is zoned R 4 and is largely built up with multiple-dwelling buildings, which presumably could not be built on their respective lots if the R 3 lot-area restrictions were applicable, the east side of the street is zoned R 3 and is for the most part built up with single-family dwellings which comply with the R 3 lot-area restrictions. Thus, this is not a case of a glaring miszoning of a specific piece of property. On the contrary, the classification of plaintiffs' property is entirely consistent not only with the zoning classification of other property on the east side of Jersey Avenue, but also with the actual construction and use of most of the property there situated. The fact that property across the street has been given a different classification and has been built up in a different manner does not demonstrate that the ordinance is unreasonable as applied to plaintiffs' property. This court has frequently recognized that a street may form an appropriate boundary of zoning districts and that property on one side of a thoroughfare may be given one zoning classification, while property on the other side may be classified differently. *Mahoney* v. *City of Chicago,* 9 Ill.2d 156; *Munde lein Estates* v. *Village of Mundelein,* 409 Ill. 291.

Nor is there evidence that the traffic on Jersey Avenue is in itself sufficient to make the zoning ordinance invalid as applied to plaintiffs' property. While the record contains intimations that Jersey Avenue is a relatively heavily traveled street, the nature and extent of the traffic does not appear from the record. Moreover, the traffic on the street has not prevented the construction and sale of single-family dwellings along the street in immediate proximity to plaintiffs' property. We have repeatedly held that the fact that property is situated along a heavily traveled street is in it-

self an insufficient circumstance to defeat a zoning classification. *Fox* v. *City of Springfield,* 10 Ill.2d 198; *La Salle National Bank* v. *City of Chicago,* 6 Ill.2d 22.

The fact that property on the corner of Bryn Mawr and Jersey is zoned and used commercially is also insufficient to demonstrate that the ordinance as applied to plaintiffs' property is unreasonable. Plaintiffs' property is insulated from this commercial property by seven houses and two vacant lots, and all seven of these houses have been built and sold with the last few years.

Virtually the only indication of any unusual hardship in the application of the zoning ordinance to plaintiffs' property is the existence of a garage on the property immediately north of theirs. We recognize that a location immediately adjacent to a garage is not usually considered the most desirable location for a residence, but we do not think that this fact in itself, in the absence of other evidence, can be decisive. The fact that this may not be a prime location for one or two families to live does not *ipso facto* compel the conclusion that it is unconstitutional not to permit at least five families to live there. It is possible that there are circumstances which would make the lot-area restrictions of the R 3 classification unreasonable as applied to this particular property, but, if that is the case, it has not been conclusively demonstrated by clear and convincing evidence in the record. The evidence adduced by plaintiffs as to the relative value of their property with and without the restriction to which they object is not only weak but completely begs the question, since it appears to have been based upon the erroneous assumption that the property is limited to one residence under the present restrictions, while it is clearly possible to build a two-family dwelling. We have repeatedly held that the fact that a zoning restriction may make property less valuable to the owner than it would be without the restriction is not of itself a sufficient circumstance to compel the conclusion that the restriction is arbi-

trary and unreasonable. But here, the record is completely devoid of any evidence showing that the restriction has occasioned any financial loss to plaintiffs. Plaintiffs have produced evidence showing that the property is worth substantially more for multiple-family dwellings than for a single-family dwelling. But they have produced no evidence of its value as a two-family dwelling, which is possible under the present restriction. There is no showing when plaintiffs acquired the property in question, what the zoning was at the time of acquisition, nor the price they paid for the property. These factors might well be of some relevance in showing whether or not the ordinance as applied to plaintiffs works any unusual hardship which might result in its being held invalid as applied to their property. But none of these facts is in the record. On the state of the record, we are unable to say that plaintiffs have met the burden of demonstrating, by clear and convincing evidence, that the application of the zoning ordinance, as applied to their property, is so clearly unreasonable as to render it unconstitutional and void.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*