(No. 36647.—

EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, Appellant, *vs.* THE VILLAGE OF NILES, Appellee.

*Opinion filed January 23, 1962.—Rehearing denied March 22, 1962.*

HELLER & MORRIS, of Chicago, (JERROLD L. MORRIS, and ARNOLD L. COHEN, of counsel,) for appellant.

BRYANT, COLWELL & WELLS, of Chicago, (JOHN M. BRYANT, and HENRY L. WELLS, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Exchange National Bank, as trustee, sought an injunction to restrain the enforcement of the zoning ordinance of the village of Niles on the ground that the ordinance is invalid as applied to its property. A master in chancery recommended that the ordinance be held invalid, but the judge sustained exceptions to the master's report and ordered the cause dismissed. The plaintiff has appealed directly to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75(1)(c).

The three vacant parcels of land which the plaintiff owns have a total frontage of 490 feet on the east side of Waukegan Road, and are 125 feet deep. The southernmost parcel has a frontage of 128 feet south of Dobson Street, the middle parcel has a frontage of 226 feet between Dobson and Jonquil Terrace, and the northernmost parcel has a frontage of 96 feet north of Jonquil Terrace. The property has been zoned for single-family residential use since 1936, and plaintiff seeks to enjoin the village officials from interfering with the erection of multiple-family dwellings.

The major east and west roads that bound the area in which the plaintiff's property is located are Oakton Street on the north, and Howard Street on the south. Between those two streets, approximately a quarter of a mile east of Waukegan Road, is a forest preserve. Of the entire area lying between these two streets, and between Waukegan Road on the west and the forest preserve on the east, approximately the south half is zoned and used for residential purposes. Most of the north half was rezoned from single-family use to commercial use in 1955, and a very large shopping center is to be erected there. The north half contains about 35 acres, ten of which comprise a school site.

Across Waukegan Road from the subject property, the entire frontage between Oakton and Howard is zoned for

single-family residence use, and is occupied by residences, with the exception of a relatively small commercial development at the southwest corner of Waukegan Road and Oakton Street. The southern boundary of this development is approximately a quarter of a mile north of the northern boundary of the plaintiff's property. All of the property on the north side of Howard Street on both sides of Waukegan Road in this area is also zoned and used for single-family residences. The same is true of the south side of Howard Street, except at its intersection with Waukegan Road. On the southwest corner of this intersection there are apartment buildings containing 42 units. South of these buildings are more single-family residences along the west side of Waukegan. The southeast corner of the intersection of Howard and Waukegan is vacant, but is zoned for commercial use. On the next corner south there is a filling station on the east side of Waukegan, and from there on south the uses on the east side of Waukegan are mixed commercial and residential.

Each party called as witnesses an expert in zoning and city planning and a real-estate broker familiar with the area in question. The plaintiff's real-estate broker testified that as presently zoned the property is worth $80 per front foot, ($39,200) and the defendant's that it is worth $125 per front foot ($61,250). They agreed that the property would be worth more if it was zoned to allow the construction of multiple dwellings, the plaintiff's witness testifying to a value of $250 per front foot ($120,500), and the defendant's to a value of $175 per front foot ($85,750). The defendant's witness admitted that builders in the area were willing to pay between $200 and $220 per front foot for apartment house sites. The plaintiff's witness admitted that the same differences in front-foot value between multiple and single-family use that applied to the plaintiff's property would also apply to all of the lots in the block east of the plaintiff's property, if the residences now there were re-

moved and the land was vacant. The plaintiff's witnesses testified that a multiple-family development would have no adverse effect on the market value of the surrounding property, while the defendant's witnesses were of the contrary opinion.

The relevant factors in determining the validity of a zoning ordinance are familiar, as are the governing legal principles, and they need not be restated. Dominant among these principles is the repeated doctrine that a zoning ordinance is presumed to be valid and that the burden is upon the person who attacks its validity to establish by clear and affirmative evidence that it is arbitrary. The courts will not overrule the decisions of the municipal authorities where the reasonableness of the classification is debatable. *Elmhurst National Bank* v. *City of Chicago,* 22 Ill.2d 396.

In our opinion the trial court properly held that the plaintiff in this case did not discharge its burden.

To the south, Howard Street would appear to be a logical dividing line for zoning purposes, and with its residential development it is also a practical buffer between the plaintiff's property and apartment and commercial development to the south along Waukegan Road. It seems likely that the large shopping center to the north would have a substantially adverse effect upon single-family residential development of the smallest and northernmost of the plaintiff's three parcels, even though all of the property along the southern boundary of the shopping center area, except the plaintiff's, is occupied by single-family residences. Whatever might be the case as to the northernmost parcel, standing alone, we can not say that it was error to refuse to enjoin the enforcement of the ordinance as to all three parcels, which is what the plaintiff sought.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*