Joseph M. Baron and Jane M. Baron, Plaintiffs-Appellants, v. George J. Abt and Juana C. Abt, and P. Maloney, Defendants-Appellees.

Gen. No. 50,131.

First District, First Division.

July 30, 1965.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellants.

Lee C. Korbakes, of Chicago, for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiffs appeal from a decree dismissing their complaint for want of equity. There is little dispute as to the facts out of which the action arises.

Plaintiffs are owners, since 1948, of real estate improved with a 40 apartment building located on the south side of Farwell Avenue in the City of Chicago, bearing the street address of 1633–43 West Farwell. Defendants George and Juana Abt are owners of real estate immediately adjacent to and east of plaintiffs'

* See Callaghan's Illinois Digest, same topic and section number.

property bearing the address of 1629–31 West Farwell. Defendants purchased the real estate in October, 1963 and razed the one family dwelling thereon preparatory to constructing a ten-unit building. On March 23, 1964 the Department of Buildings of the City of Chicago issued to defendants * building permits authorizing the construction of a two and three story ten-unit apartment building in accordance with plans relating thereto which had been approved by said Department, and were found to comply with all applicable provisions of the Municipal Code of Chicago and the Chicago Zoning Ordinance.

On April 4, 1964 the complaint was filed alleging that the construction proposed to be undertaken by defendants would violate certain provisions of the Chicago Zoning Ordinance and of the Municipal Code; that plaintiffs, as a consequence of the alleged violations would suffer irreparable damage in that some of their apartments would be deprived of free access of light and air; and that the building would suffer a serious diminution in value. The complaint further alleged that should the applicable ordinances be found to permit said construction, that the ordinances were unconstitutional because they deprive plaintiffs "of property rights, to wit: free access of light, air, and as increasing the fire and safety hazards without due process of law."

Plaintiffs prayed that defendants be restrained from proceeding with the construction and for such other relief as equity might require. After defendants filed answer thereto, the cause was referred to a master in chancery who reported to the court recommending that the cause be dismissed for want of equity. The chan-

---

* George Abt acted as general contractor in the construction; defendant Maloney was the concrete and mason subcontractor and was party defendant for the purpose of the restraining order.

416

cellor, by agreement of the parties, considered the evidence as reported by the master, heard arguments of counsel and entered a decree dismissing the cause of action.

It is the theory of the plaintiffs that the building then proposed to be erected, but since completed, violates zoning and building ordinances, works irreparable injury to their adjacent property, and that the court should have enjoined the construction thereof. On appeal plaintiffs request relief by way of money damages since the building is now completed.

Defendants contend that the construction was in compliance with the applicable provisions of the zoning ordinance and building code of the city and the presumption of the validity of these ordinances was not rebutted by the plaintiffs.

Defendants' building is "L" shaped, having a clearance on the east side of 6 feet from their east lot line to their building extending from street to alley. On the west side the base of the "L" abuts plaintiffs' property for a distance of 27 feet 9 inches, rising to a height of 27 feet and approximately 3 feet from plaintiffs' building (the width of a sidewalk on plaintiffs' property extending alongside their east lot line from front to rear). The upright of the "L" to the north of the base has its west wall parallel to and a distance of approximately 8 feet from plaintiffs' east lot line and faces an "outer court."

The controversy regards the abutting blank wall, which is opposite a kitchen window, a bathroom window and two dining room windows of one apartment and a bedroom window of another apartment situated on the first floor of plaintiffs' building; and identical windows of two apartments on the second floor. The third floor apartments are not affected, the window sills thereof being 30 feet from the ground.

The issues herein are addressed to certain specific provisions of the Chicago Zoning Ordinance (Municipal Code of Chicago, c 194A), adopted May 29, 1957, as amended to and including January 1, 1964, and of the Municipal Code of Chicago, c 66, et seq. (1963), and their effect upon the respective adjoining buildings of plaintiffs and defendants, which enforcement would have.

Article 2 of the zoning ordinance indicates the intent and purpose for which it was enacted as follows:

Article 2—Intent and Purpose.

This comprehensive amendment is adopted for the following purposes:

(1) To promote and to protect the public health, safety, morals, comfort, convenience, and the general welfare of the people;

. . . . . .

(3) To protect the character and maintain the stability of residential, business, commercial and manufacturing areas within the City and to promote the orderly and beneficial development of such areas;

(4) To provide adequate light, air, privacy, and convenience of access to property;

(5) To regulate the intensity of use of zoning lots, and to determine the area of open spaces surrounding buildings necessary to provide adequate light and air and protect the general health.

The properties of both parties are classified in the R4 General Residence District under the Chicago Zoning Ordinance (Municipal Code of Chicago, c 194A, 1964). Section 7.8-4 of the ordinance provides:

7.8-4 Minimum Side Yards—R4 General Residence District.

418

In an R4 District, side yards shall be provided as follows:

(1) In an R4 District, side yards are not required along the side lot lines except on a reversed corner lot. If provided on a voluntary basis no side yard other than one adjoining a street or alley shall be less than 8 feet in width or 10 per cent of the height of the building whichever is less; however, each side yard shall not be less than 3 feet in width, subject to the provisions of Chapter 66 of the Municipal Code.

Thus, the above section specifically exempts property located in an R4 general residence district from any side yard requirements, unless such are provided voluntarily. If so provided, the side yard must be not less than 8 feet in width or 10 per cent of the height of the building, whichever is less, provided however, that in no event shall such side yard be less than 3 feet in width, subject to applicable provisions of the building code (Municipal Code of Chicago, c 66 et seq.). Defendants' building at no point exceeds 30 feet in height, and if they had elected to provide a side yard in no event could it be less than 3 feet in width.

Relative to the east line of defendants' property, it is clear that they have elected to provide a side yard within the meaning of section 7.8–4 of the zoning ordinance, the width of which is in compliance thereof, being 6 feet. Chapter 66 of the Municipal Code provides the following criteria:

Chapter 66—Light, Ventilation and Sanitation [in effect at time of filing complaint].

66–1. Every window required for natural light and every opening required for natural ventilation shall face directly on a public way or on a court complying with the provisions of sections 66–1.1 to 66–1.3, inclusive.

419

66–1.1 (a) Court. A court is an open, unobstructed space on the same lot with the building.

(b) Rear Court. A rear court is a court extending the entire width of the lot and extending from the building to the rear of the lot.

(c) Through Court. A through court is a court open at both ends of two empty spaces, one of which shall not be less than thirty feet wide, the opposite not less than ten feet wide. The open spaces shall be public ways, yards, permanent easements, outer courts, or another through court or a combination of two or more such areas.

(d) Outer Court. An outer court is a court open on one end to an open space not less than thirty feet wide. The open space shall be a public way, yard or through court or any combination of two or more such areas.

(e) Inner Court. An inner court is a court entirely surrounded by building walls or lot lines or any court not defined as a through or outer court.

(f) Recess. A recess is an open area formed by the indentation of a wall of a court, such indentation having a depth of not more than one-half its length.

Chapter 66–1.3. Except as provided in section 53–6 for Institutional Units, all courts required for natural light and ventilation shall comply with the following requirements:

. . . . . .

(b) Through Courts.

(1) The width of a through court shall be not less than six feet.

. . . . . .

(3) Where the permanent required width of a through court between buildings on adjoining

lots is assured as provided by the Chicago Zoning Ordinance, by permanent easements or by the location of a modern permanent building on the adjoining lot, the width of the court may be measured between the permitted location of the walls of two buildings on adjoining lots, or the permitted location of the wall on the subject lot and the existing wall of a modern permanent building on the adjoining lot. In no case shall the wall of a through court be located less than three feet from an interior lot line, nor shall more than one half the required width of such a through court be located on adjoining lot.

· · · · · ·

(c) Outer Courts.
(1) The width of an outer court shall not be less than eight feet.

· · · · · ·

(3) When the permanent required width of an outer court between buildings on the adjoining lots is assured as provided by provisions of the Chicago Zoning Ordinance, by permanent easements, or by the location of a modern permanent building on the adjoining lot, the width of the court may be measured between the permitted location of the wall of the subject building and the existing wall of a modern permanent building on the adjoining lot. In no case shall the wall of an outer court be located less than four feet from an interior lot line, nor shall more than one-half of the required width of such an outer court be located on an adjoining lot.

Under sections 66–1.1(a) and (c) and section 66–1.3(b)(1) a through court is defined as being an open space on the same lot as the building which is open at both ends to two open spaces and not less than 6

feet in width. Thus, the side yard constitutes a "through court," complying with the provisions of the Code.

Plaintiffs argue that the provisions of section 66–1.3(c)(3), which require the wall of an "outer court" to be located not less than 4 feet from an interior lot line, should be interpreted as referring to the wall of defendants' building which abuts the east line of their property. This is wholly without merit. First, to construe the code provisions as requiring the removal of defendants' abutting west wall from the property line a distance of 4 feet would operate to destroy the very existence of the "outer court" which by definition under the code is *open only at one end to an open space,* by rendering the court open at both ends. Consequently, what was intended to be a lawful "outer court" would be converted into a "through court." Such an attempt to create, in effect, a side yard along the west lot line of defendants' property, would result in the denial of the right of defendants to elect not to provide such a side yard which section 7.8–4 of the ordinance specifically grants to them.

Secondly, the provisions of section 66–1.3(c)(3) obviously contemplate only that wall of the "outer court" which is parallel to the lot line, thus establishing minimum width distances separating such walls from property lines where less than 8 feet minimum "outer court" width is available. The section allows a property owner to borrow from the adjoining property. In the instant cause the defendants have provided all required yard and court dimensions from within their own lot lines in accordance with the Act and the Code. Therefore, the provisions of section 66.1–3(c)(3) have no factual application thereto.

■ We find the language of the pertinent provisions of the subject ordinances clear and unambiguous in expressing the intent of the City Council. In

Village of Bannockburn v. Lake County, 17 Ill2d 155, 158, 159, 160 NE2d 773 (1959), the Supreme Court said as follows: "In reading the language of the statute here, we find no need whatsoever for construction, interpretation or labored effort to ascertain the legislative intention. In this statute there is neither ambiguity nor room for construction. It seems to us abundantly clear that the legislature expressed its intention in clear and unmistakable terms and the only function of the court under such circumstances is to declare and enforce the law as enacted by the legislature." We hold such pronouncement applicable in this case and find that the facts and evidence clearly establish that the defendants' building complies with both the Zoning Act and Building Code.

Plaintiffs further contend that such interpretation of the ordinances would have an adverse effect upon their property by virtue of the abutment on the lot line of a portion of defendants' west wall because the adequacy of light and air to ten windows in their property is impaired; essentially the nature of such argument is to challenge the reasonableness of the subject ordinances as applied to plaintiffs' property and constitutes a challenge of the validity of these ordinances.

Plaintiffs had the burden, therefore, to overcome the presumption of validity that attaches to duly enacted zoning and building ordinances by clear and affirmative evidence, that such ordinances as applied to their property were arbitrary, unreasonable and discriminatory or that they had no relation to the promotion of public health, safety, morals or welfare. Cosmopolitan Nat. Bank of Chicago v. Chicago, 22 Ill2d 367, 372, 176 NE2d 795 (1961); Exchange Nat. Bank v. Village of Niles, 24 Ill2d 144, 147, 180 NE2d 462 (1962); Bennett v. City of Chicago, 24 Ill2d 270,

273, 181 NE2d 96 (1962). This burden plaintiffs failed to sustain.

Although the enforcement of the subject ordinances may cause the diminution of light and air as plaintiffs allege with respect to ten windows in four of their 40 apartments because situated opposite the wall in controversy the validity of said ordinances must nevertheless be sustained despite the alleged hardship upon plaintiffs as individual owners. First Nat. Bank v. County of Lake, 7 Ill2d 213, 225, 226, 130 NE2d 267 (1955); Cosmopolitan Nat. Bank of Chicago v. Chicago, 22 Ill2d 367, 374, 176 NE2d 795; Evanston Best & Co., Inc., v. Goodman, 369 Ill 207, 211, 16 NE2d 131 (1938).

It is also the position of plaintiffs that a "through court" now exists on the east side of their property and that defendants should not be permitted to destroy this "through court" by building on the lot line and thereby reducing the minimum requirement of 6 feet (sec 66–1.3(b)(1)) for such "through court."

Defendants say this position is untenable because the Plat of Survey, in evidence, shows that plaintiffs' building has a wall abutting defendants' lot line for a distance of approximately 25 feet commencing at the north east corner thereof.* By virtue of this wall defendants argue the only open and unobstructed space along the east side of plaintiffs' property is south of that portion which abuts the property line, and consequently under section 66–1.1(a) and (d) of the Code, this space constitutes an "outer court" and not a "through court." Be that as it may, we hold that plaintiffs' contention is without merit because the subject provisions of Chapter 66 are applicable prospectively to defendants' property and do

---

* This is an enclosed passageway continuing the east sidewalk to the street.

not retroactively effect plaintiffs' property. Any intent that an ordinance operate retroactively must be evident, as where the pertinent language specifically requires compliance by pre-existing buildings. City of Chicago v. L. J. Sheridan & Co., Inc., 18 Ill App2d 57, 74, 151 NE2d 451 (1958). The language of Chapter 66 does not evidence such retroactive intent.

Finally, plaintiffs claim damage because defendants' west wall interferes with their prescriptive right to have the passage of light and ventilation to their property unobstructed by a new structure erected upon the adjoining property. It was regarding such alleged damage that plaintiffs produced evidence that their building had a fair cash market value of from $240,000 to $250,000 without the presence of the disputed wall and a fair cash market value of from $210,000 to $225,000 with that wall present.

In Keating v. Springer, 146 Ill 481, 492, 34 NE 805 (1893), the court held:

> "Air and light are the common property of all. The owner of a lot cannot be presumed to have assented to an encroachment thereon, if he has permitted the light and air to pass over it into the windows of his neighbor's house situated upon the adjoining lot. The actual enjoyment of the air and light by the latter is upon his own premises only. The prevalent rule in the United States is, that an easement in the unobstructed passage of light over an adjoining close cannot be acquired by prescription. . . . In the early case of Gerber v. Gravel, 16 Ill 217, this court held that such a right might be so acquired, but in the later case of Guest v. Reynolds, 68 Ill 478, the Gerber case was, in effect, overruled; and it was held, that 'a prescriptive right, springing up under the narrow limitation in the English law, to prevent

obstructions to window lights' 'cannot be applied to the growing cities and villages of this country without working the most mischievous consequences, and has never been deemed a part of our law.' "

There is no evidence in the record from which an easement in favor of plaintiffs may be implied or found, or upon which they may base a claim for damages.

For the reasons hereinabove given the judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.