26 Ill. App.3d 574 (1975)
325 N.E.2d 799
JOHN H. CAIN et al., Trustees, Plaintiffs-Appellants,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, et al., Defendants-Appellees.
No. 59903.
Illinois Appellate Court  First District (2nd Division).
February 11, 1975.
*575 Robert J. DiLeonardi, of Des Plaines, for appellants.
Friedman & Koven, of Chicago (Victor G. Savikas and James R. Levin, of counsel), for appellees B.P. Construction Co. and Ben Pekin.
Richard L. Curry, Corporation Counsel, of Chicago (Robert Retke, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.
Reversed and remanded.
*576 Mr. JUSTICE STAMOS delivered the opinion of the court:
In a three-count complaint filed September 11, 1973, plaintiffs, John H. Cain and James B. Cain, trustees of a certain trustee agreement, sought declaratory and injunctive relief against defendants, American National Bank and Trust Co. of Chicago, as trustee under a certain trust agreement; B.P. Construction Co.; Ben Pekin, Ruth Greenwood, Glen Greenwood, and Ethel Kanter individually and as executrix under the will of Louis Kanter; 2314 Building, an Illinois limited partnership; and the city of Chicago. The only defendants to file an appearance in this matter were the B.P. Construction Co., Ben Pekin, individually and as general partner of 2314 Building; and the city of Chicago. Defendants filed a motion to dismiss the complaint and after a hearing on that motion, the circuit court of Cook County dismissed the complaint for want of equity.
Plaintiffs filed a three-count complaint in the circuit court seeking declaratory and injunctive relief. In Count I plaintiffs sought a declaration that since certain sections of the 1957 Chicago Zoning Ordinance do not require a side yard between plaintiffs' and defendants' property, those sections of the ordinance are invalid as applied to the property in question. In Count II plaintiffs alleged the expected violation by defendants of certain provisions of the Chicago Building Code, and on that basis, sought to enjoin the city of Chicago from issuing a building permit to defendants. In Count III plaintiffs sought to enjoin the construction of defendants' building pending final disposition of the then proposed Chicago Lakefront Plan Ordinance.[1] After a hearing on defendants' motion to dismiss, the circuit court dismissed plaintiffs' complaint for want of equity. This appeal follows.
The physical facts are as follows: Plaintiffs have owned the property at 2322-2330 Lincoln Park West since 1965. The property is presently occupied by a four-story building containing 32 units built in 1924. Sixteen units of plaintiff's building have their only windows facing south, approximately 1 to 4 feet in from plaintiffs' south property line.[2]
Defendants own the property immediately adjacent to and south of plaintiffs' property. Defendants' lot, 60 by 170 feet, was formerly occupied *577 by a single-family dwelling. However, defendants have demolished the single-family dwelling[3] and have commenced construction of a 29-story building approximately 281 feet in height containing 54 units. The building now under construction by defendants will cover defendants' entire property, and thus defendants' north wall will be 1 to 4 feet from plaintiffs' south wall and from the only windows for the 16 units of plaintiffs' building facing south.
The legal facts are as follows: When plaintiffs' four-story building was constructed, the zoning ordinance then in effect was the 1923 Chicago Zoning Ordinance. Under the 1923 ordinance both plaintiffs' and defendants' property were in a 3rd volume, apartment district. (Chicago Zoning Ordinance of 1923, Chicago City Council Proceedings, 1922-1923, at 2448-2449.)[4] For a 3rd volume, apartment district, the relevant volume, height, and side-yard requirements in 1923 were as follows:
"[N]o building shall occupy more than 75 per cent of the area of a lot if an interior lot * * * and the aggregate volume in cubic feet of all buildings on a lot exclusive of the ground story of a garage shall not exceed the area of the lot in square feet multiplied by 100 feet * * *." (Chicago Municipal Code 1931, ch. 34, par. 1876(a).)
"At any street line no building or part thereof shall exceed a height of 132 feet. For each 1 foot that a building or portion of it sets back from any street line, such building or such portion thereof may be erected 2 feet in height in excess of 132 feet. No part of a building shall be erected to a height at any point in excess of 198 feet." (Chicago Municipal Code 1931, ch. 34, par. 1876(c).)
"[P]rovided that for each 10 feet in height that any such portion of the building is erected above the street line height limit, such portion of the building shall be set back 1 foot from all lines of adjacent premises." (Chicago Municipal Code 1931, ch. 34, par. 1879(d).)
With those zoning regulations in effect, plaintiffs' building was erected 1 to 4 feet from their south property line.
In 1957, the city of Chicago comprehensively amended the 1923 zoning *578 ordinance. Under the 1957 zoning ordinance, currently in effect as amended, both plaintiffs' and defendants' property are now zoned R7 General Residence District. (Chicago, Zoning Ordinance, May 29, 1957, part B, par. 77b.) The 1957 ordinance, as amended, did not set any height limitations as such. Rather, the ordinance set a minimum lot area and a maximum-floor-area ratio for the various districts. (Chicago Zoning Ordinance, May 29, 1957, pars. 7.5-7 and 7.6-7.) The side-yard requirements are as follows:
"In a R7 District, the regulations governing side yards in the R6 District shall apply. (Amend. Coun. J. 1-17-69, p. 4916.)" (Chicago, Zoning Ordinance, May 29, 1957, par. 7.8-7.)
"In an R6 District, side yards are not required along the side lot lines except on a reversed corner lot where the R4 District regulations shall apply. If provided on a voluntary basis, each side yard other than one adjoining a street or alley shall be equal to 10 percent of the height of the building; or 6 feet in width, whichever is greater; however, no side yard shall be required to be greater than 20 feet in width. (Amend. Coun. J. 1-17-69, p. 4916; 3-10-71, p. 10557; 7-21-71, p. 894.)" (Chicago Zoning Ordinance, May 29, 1957, par. 7.8-6.)[5]
Pursuant to these regulations, defendants commenced construction on their 29-story apartment building.
 1 The sole issue presented by this appeal concerns the legal sufficiency of plaintiffs' complaint. When defendants filed their motion to dismiss, certain well-settled legal principles became controlling. A motion to dismiss admits for purposes of review such facts as are well pleaded, but it does not admit conclusions of law, the pleader's construction of a statute, or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (Richards v. Leimbacher, 131 Ill. App.2d 775, 267 N.E.2d 523; Fred Nemerovski, and Co. v. Barbara, 106 Ill. App.2d 466, 246 N.E.2d 124.) In determining whether a complaint states facts or conclusions, the complaint must be considered as a whole and not in its disconnected parts. (Courtney v. Board of Education, 6 Ill. App.3d 424, 286 N.E.2d 25.) With these legal principles in mind, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiffs to relief. (Courtney v. Board of Education, supra; Callaizakis v. Astor Development Co., 4 Ill. App.3d 163, *579 280 N.E.2d 512.) Finally, section 42(2) of the Civil Practice Act states that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." (Ill. Rev. Stat. 1973, ch. 110, par. 42(2).) It is against these legal principles that plaintiffs' complaint must be tested.
In Count I plaintiffs challenge the validity of the side-yard requirements (or lack thereof) of the 1957 Chicago Zoning Ordinance as applied to plaintiffs' and defendants' property on essentially four grounds: (1) that because of the closeness of defendants' proposed building, 16 apartments in plaintiffs' building would be deprived of their only source of air, light, and ventilation, and consequently, the fair market value of plaintiffs' land and building and the rental plaintiffs could reasonably expect to receive for the 16 apartments would be substantially reduced; (2) that when plaintiffs' building was erected in 1924, the 1923 Chicago Zoning Ordinance contained certain side-yard requirements which were subsequently eliminated and that such a change was unreasonable as applied to the instant properties; (3) that the lack of side-yard requirements violates the stated objectives of the State Zoning Enabling Statute and the intent and purpose of the 1957 Chicago Zoning Ordinance as stated in article 2 of that ordinance; and (4) that the elimination of side-yard requirements is arbitrary, discriminatory, and fails to bear any reasonable relationship to the public health, safety, comfort, and welfare.
 2, 3 Plaintiffs first argue that because side yards are not required under the 1957 ordinance, defendants' building can be located 1 to 4 feet from plaintiffs' building, and thus, 16 apartments in plaintiffs' 4-story building will be in perpetual shadow caused by defendants' 29-story building. Plaintiffs contend that this deprivation of air, light, and ventilation will result in a reduced value for plaintiffs' property and, thus, the ordinance is invalid. Plaintiffs concede that under Illinois law one property owner may not acquire a prescriptive or implied right to air, light, or ventilation over the land of another. (Guest v. Reynolds, 68 Ill. 478; Keating v. Springer, 146 Ill. 481, 34 N.E. 805; Baird v. Hanna, 328 Ill. 436, 159 N.E.2d 793.) It therefore follows that defendants breached no common-law duty to plaintiffs in beginning construction of a building on their own property 1 to 4 feet from plaintiffs' property, even if that building would deprive plaintiffs of air, light, and ventilation. Consequently, even though the 1957 Chicago Zoning Ordinance permits defendants to deprive plaintiffs of their air, light, and ventilation by building on the full perimeter of defendants' lot, that ordinance does not change *580 or modify any duty owed to plaintiffs, but merely reaffirms what has long been the law in Illinois.[6] Thus, this portion of plaintiffs' argument is premised upon a duty that does not exist. The mere fact that plaintiffs' property may be reduced in value by defendants' building is of no legal consequence. For it is axiomatic that for any right to flow to plaintiffs, there must be a correlative duty owed by defendants. (Kay v. Ludwick, 87 Ill. App.2d 114, 230 N.E.2d 494.) However, under neither the common law nor the 1957 Chicago Zoning Ordinance did defendants owe plaintiffs any duty to insure plaintiffs' continued access to air, light, and ventilation. (Baron v. Abt, 61 Ill. App.2d 414, 209 N.E.2d 843.) This being so, the possible loss in value of plaintiffs' property is a loss for which the law provides no remedy. Therefore, on this premise plaintiffs' complaint did not state a cause of action upon which relief could be granted.
Plaintiffs' second argument is essentially one of justifiable reliance. Plaintiffs argue that when their building was erected in 1924, the 1923 zoning ordinance contained side-yard requirements which plaintiffs could justifiably rely on for separation between their property and adjoining property. Thus, the elimination of these requirements by the 1957 zoning ordinance was unreasonable as applied to the instant properties. It is true that plaintiffs have the right to rely on the rule that a zoning classification will not be changed except for the public good. (Forestview Homeowners Association, Inc. v. County of Cook, 18 Ill. App.3d 230, 309 N.E.2d 763.) However, defendants who purchased their property after enactment of the 1957 zoning ordinance, would equally seek refuge in that rule. Moreover, in such a posture, plaintiffs' argument begs the central question of whether the zoning change, if any, was for the public good. In any event, such a rule is inapplicable in the instant case. For, a motion to dismiss does not admit the pleader's construction of a statute, and contrary to plaintiffs' assertion, the 1923 Chicago Zoning Ordinance did not require side yards for all buildings in a 3rd volume, apartment district. Under the 1923 ordinance, side yards were only required when the building exceeded a height of 132 feet. (Chicago Municipal Code 1931, ch. 34, pars. 1879(d) and 1876(c).) Under that ordinance a building 132 feet high, 50 feet wide, and 150 feet long could have been built immediately adjacent to plaintiffs' building.[7] While a 132-foot-high building *581 next to plaintiffs' four-story building would not be as overpowering as defendants' 280-foot building, the effect upon the 16 apartments in plaintiffs' building would be substantially the same. A building next to plaintiffs' that is three times higher than plaintiffs' would have the same deleterious effect on plaintiffs' air, light, and ventilation. Thus, there having been no material change in the ordinance, plaintiffs can not complain that the change was unreasonable. Therefore, on this premise also, plaintiffs' complaint did not state a cause of action upon which relief could be granted.
 4 Plaintiffs' third argument is that the lack of side-yard requirements violates the State zoning enabling statute and the intent and purposes of the 1957 Chicago Zoning Ordinance as stated in article 2 of that ordinance. Plaintiffs' reliance on the language of the State zoning enabling statute (Ill. Rev. Stat. 1973, ch. 24, par. 11-13-1), is misplaced. For by its very terms, that statute does not apply to any municipality which is a home rule unit. Since Chicago is a home rule unit (Ill. Const. art. VII, § 6(a)), its power to zone for the public health, safety, morals, and welfare now properly derives from the Illinois Constitution and its grant of power to home rule units.
 5, 6 Plaintiffs' argument as to article 2 of the zoning ordinance itself presents a different question. Plaintiffs point to the following language in article 2 of the 1957 Chicago Zoning Ordinance:
"This comprehensive amendment is adopted for the following purposes:
* * *
(4) To provide adequate light, air, privacy, and convenience to access to property;
(5) To regulate the intensity of use of zoning lots, and to determine the area of open spaces surrounding buildings necessary to provide light and air and protect the public health;
* * *
(7) To fix reasonable standards to which buildings or structures shall conform;
(8) To prohibit uses, buildings or structures which are incompatible with the character of development or the permitted uses within specified zoning districts;
* * *
(11) To provide protection against fire, explosion, noxious fumes, and other hazards in the interest of the public health, safety, comfort and the general welfare;
(12) To prevent the overcrowding of land and undue concentration of structures, so far as is possible and appropriate in each *582 district, by regulating the use and bulk of buildings in relation to the land surrounding them."
Plaintiffs seemingly argue that any zoning regulation that violates any of the stated purposes of the zoning ordinance is invalid. While we agree that many of the purposes outlined by the ordinance are relevant to a determination of a zoning regulation's reasonableness, we cannot agree that a regulation is invalid merely because it seems to violate one or more of the stated purposes. To our knowledge no case has ever enunciated such a broad rule of law. It is settled that a municipality must substantially adhere to the procedural requirements mandated by the applicable zoning ordinance. (Treadway v. City of Rockford, 24 Ill.2d 488, 182 N.E.2d 219; North State, Astor, Lake Shore Drive Association v. City of Chicago, 131 Ill. App.2d 251, 266 N.E.2d 742.) However, in the instant case, strict compliance with the preamble would be impossible. In article 2 of the 1957 Chicago Zoning Ordinance, 17 different purposes are mentioned. Each zoning regulation must be tested by a careful balancing of all the stated purposes. Plaintiffs emphasize that provision in the ordinance regarding "adequate light, air, privacy, and convenience of access to property." However, no one provision is controlling. Moreover, that provision has no meaning by itself and can be applied only in relation to the substantive provisions of the ordinance. For instance, light, air, privacy, and access may be adequately provided by front- and rear-yard requirements as easily as by side-yard requirements. To find absolute guarantees in the "intent and purpose" article of the ordinance would place greater importance on what is essentially a preamble than on the substantive articles of the ordinance. In this regard, the intent and purpose section of a statute has been used to ascertain legislative intent when the substantive provision of the statute is vague or ambiguous. (Brown v. Board of Appeals, 327 Ill. 644, 159 N.E.2d 225.) However, when the substantive provision is clear and unambiguous, as in the present case, judicial inquiry as to its meaning ceases. The test then becomes whether the zoning regulation bears a reasonable relationship to the public health, safety, and welfare. For this test many factors, including those stated in the ordinance itself, become important, and all must be weighed in a determination of the regulation's validity. With these principles in mind, we decline to hold that substantive rights are created by the "intent and purposes" article of the zoning ordinance and instead hold that the purposes outlined in that article are just one factor against which the regulation's validity must be tested. Consequently, the mere allegation, standing alone, that a zoning regulation violates the stated purposes of a zoning ordinance is insufficient to state a cause of action upon which relief can be granted.
*583 The final argument advanced by plaintiffs to support a cause of action in Count I is that the lack of side-yard requirements is arbitrary, discriminatory, and fails to bear any reasonable relationship to the public health, safety, comfort, and welfare. While that argument, as such, is not explicitly set out in plaintiffs' complaint, a complaint must be viewed as a whole and not in its disconnected parts. Viewed in this light, plaintiffs' complaint does state a cause of action.
 7, 8 There can be no dispute that a zoning ordinance to be valid must have a real and substantial relation to the public health, safety, morals, and general welfare. (Skrysak v. Village of Mount Prospect, 13 Ill.2d 329, 148 N.E.2d 721; Ziman v. Village of Glencoe, 1 Ill. App.3d 912, 275 N.E.2d 168.) It is clear that a zoning classification is primarily a legislative function and that zoning ordinances are presumed to be valid; yet it is also clear that the presumption of validity can be overcome by clear and convincing proof that the ordinance is arbitrary, unreasonable, and bears no substantial relationship to the public welfare. (Wolfe v. Village of Riverside, 60 Ill. App.2d 164, 208 N.E.2d 833.) However, plaintiffs were denied even the opportunity to present proof as to this issue. Plaintiffs' complaint clearly informs defendants of the type of claim they are called upon to meet and as such, dismissal of the complaint was error.
The city of Chicago relies on Baron v. Abt, 61 Ill. App.2d 414, 209 N.E. 2d 843, for the proposition that even if plaintiffs proved all the factual allegations in its complaint, the presumptive validity of the ordinance would not be overcome. In Baron, plaintiff owned a 40-unit apartment building. Defendants planned to erect a building 3 feet from plaintiff's lot line, thereby impairing the light, air, and ventilation for 10 windows in four of plaintiff's apartments. Plaintiff sought an injunction against construction of defendants' building, and after evidence was heard by a master in chancery, the court considered the evidence and dismissed the cause for want of equity. Admitting those facts, the reviewing court found no violation of the 1957 Chicago Zoning Ordinance or the Chicago Building Code. While Baron might be persuasive had there been a trial on the merits, it provides the city little support where, as here, the plaintiffs were prevented from presenting evidence. In determining the validity of a zoning ordinance, many facts must be considered: the character of the neighborhood, the zoning classification and use of nearby property, the extent to which property values are diminished by the particular zoning regulation involved, and the gain to the public compared with the hardship on the individual property owner. (Bartlett v. City of Chicago, 55 Ill. App.2d 314, 204 N.E.2d 780; Brown v. County of Lake, 67 Ill. App.2d 144, 213 N.E.2d 790.) To now deny plaintiffs the *584 opportunity to present evidence on these issues merely because another plaintiff had failed to meet his burden in an earlier case would require a determination by this court that the instant plaintiffs could present no additional or different facts than the plaintiff in Baron and that the circumstances justifying the ordinance in Baron have remained the same. However, it is impossible for any court to make such a determination merely on the basis of the pleadings alone. Baron certainly indicates the difficulty plaintiffs will have prevailing after a trial on the merits, but it is not authority for denying them the opportunity. Compare Elmer v. Board of Zoning Adjustment (1961), 343 Mass. 24, 176 N.E.2d 16, with Michigan-Lake Building Corp. v. Hamilton, 340 Ill. 284, 172 N.E. 710, and Wolfe v. Village of Riverside, supra.
We note that on the basis of the pleadings, the lack of side-yard requirements may be a fairly debatable question. If so, that debate is not for the courts, but rather, in that case, the legislative judgment must prevail. (Standard State Bank v. Village of Oak Lawn, 29 Ill.2d 465, 194 N.E.2d 201.) Nevertheless, we find that the allegations in the complaint do raise a sufficient question of fact to justify a hearing on the merits. Accordingly, the order dismissing Count I of the complaint for want of equity is reversed and remanded for a hearing not inconsistent with this opinion.
We now turn to Count II of plaintiffs' complaint. In Count II, plaintiffs alleged the expected violation by defendants of certain provisions of the Chicago Building Code, and on that basis, sought to enjoin the city of Chicago from issuing a building permit to defendants. On information and belief, plaintiffs alleged the expected violation of two sections of the Chicago Building Code. Those sections are as follows:
"A smokeproof tower may be used in lieu of any required interior stairway. At least one smokeproof tower shall be provided in every building, having a height exceeding 264 feet." (Chicago Municipal Code 1973, ch. 67, par. 67-3.1(a).)
"Cornices, rustications, quoins, moldings, belt courses, lintel, sills, oriel windows, pediments and similar projections of a decorative character may project beyond a street line not more than two feet, provided that every part of such projection is not less than twelve feet above the sidewalk level at any point and that the aggregate area of all such projection does not exceed five per cent of the wall area." (Chicago Municipal Code 1973, ch. 77, par. 77-2.2(a).)
Specifically, plaintiffs alleged that although defendants' building would exceed 264 feet, no smokeproof tower was included in the building plans. Additionally, plaintiffs alleged that defendants' building would *585 have balconies projecting 2 feet over a public space, namely, the sidewalk.
In response, defendants attached the affidavit of the president of the B.P. Construction Co. to their motion to dismiss plaintiffs' complaint. In that affidavit the affiant stated that he was familiar with the plans and specifications of the proposed building and that the building would not exceed 263.5 feet in height, that the balconies would project exactly two feet over the street line and that the lowest balcony would be 20 feet and 2 inches above the sidewalk. Plaintiffs filed no counter-affidavit in response, but instead filed a memorandum arguing that despite defendants' affidavit, certain factual questions were still in dispute. After a hearing on defendants' motion to dismiss, Count II was also dismissed for want of equity.
Defendants now characterize their motion to dismiss as being filed pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 48). Section 48 allows the filing of affidavits to support the motion attacking the pleading. (Ill. Rev. Stat. 1973, ch. 110, par. 48(1).) And, since plaintiffs failed to file a counter-affidavit, defendants argue that the facts as alleged in their affidavit became uncontested. On those facts, the cited sections of the Chicago Building Code would not be violated. Consequently, defendants contend that the trial court properly concluded that plaintiffs' complaint failed to allege facts upon which relief could be granted and properly dismissed Count II.
However, when defendants filed their motion to dismiss no section of the Civil Practice Act was cited in the pleadings or before the court. Defendants' motion was merely labeled, "Motion * * * to dismiss plaintiff's complaint." And despite defendants' present assertions, it is clear that the motion could not have been made pursuant to section 48. For a section 48 motion must be limited to one of the nine grounds specified in that section.
All grounds recited in section 48 admit the facts of the complaint but avoid the legal effect of or defeat the claim or demand of the plaintiff. Defendants' motion did not admit the facts as stated by plaintiffs, but directly challenged those facts. Defendants' motion was premised on the belief that the complaint failed to state a cause of action upon which relief could be granted. That is not a section 48 motion, but rather, a section 45 motion. (Ill. Rev. Stat. 1973, ch. 110, par. 45; see Andre v. Blackwell Electronics Industrial Co., 7 Ill. App.3d 970, 977, 289 N.E.2d 27.) Consequently, the rules governing a Section 45 motion control, and not those governing a Section 48 motion.
 9 Under a section 45 motion, all facts well pleaded by the complaint are taken as true. (Thomas v. Pretzel, 10 Ill. App.3d 610, 295 *586 N.E.2d 114; Kurowski v. Burch, 8 Ill. App.3d 716, 290 N.E.2d 401.) A section 45 motion attacks the legal sufficiency of the complaint, not the factual sufficiency. Defendants' affidavit was nothing more than evidence upon which defendants expected to contest a vital fact stated in plaintiffs' complaint. However, defenses which are factual in their nature rather than legal are not available to defendants on a motion to dismiss, but should be set forth in their answer. (Vrooman v. Hawbaker, 387 Ill. 428, 56 N.E.2d 623; Dorin v. Occidental Life Insurance Co., 132 Ill. App.2d 387, 270 N.E.2d 515.) Thus, defendants could not challenge the facts as alleged by plaintiffs, but rather, their motion to dismiss admitted all facts well pleaded. This being so, plaintiffs' complaint properly alleged the expected violation of the Chicago Building Code by defendants and consequently, it was error to dismiss Count II for failure to state a claim upon which relief could be granted.
Accordingly, the order of the circuit court dismissing Counts I and II of plaintiffs' complaint is reversed and this cause remanded for proceedings not inconsistent with this opinion.
Reversed and remanded.
DOWNING, P.J., and LEIGHTON, J., concur.
NOTES
[1] Count III has been expressly abandoned by plaintiffs on appeal, and consequently, we will consider only the first two counts of plaintiffs' complaint.
[2] As occasionally occurs during a motion to dismiss, there is some dispute as to whether the windows are one or four feet from the south property line. In its complaint, plaintiffs set the distance at 1 foot. In their motion to dismiss, defendants place the distance at 1 foot for 1/8 of plaintiffs' building and at 4 feet for 7/8's of plaintiffs' building.
[3] Although the record contains no indication of when defendants purchased their property or when the single-family dwelling was demolished, during oral argument, plaintiffs admitted that defendants purchased their property subsequent to enactment of the 1957 zoning ordinance.
[4] Except for the Use and Volume District Map referred to here, the Chicago Zoning Ordinance of 1923 was first codified in 1931. Hereafter, citations to the 1923 ordinance will refer to the 1931 Code. During those 8 years, there were no relevant changes in the 1923 ordinance.
[5] The amendments indicated in sections 7.8-7 and 7.8-6 do not materially affect the instant appeal.
[6] As will be seen later, contrary to plaintiffs' assertion, side yards were not required under the 1923 ordinance either. Thus, neither the 1923 nor 1957 zoning ordinance changed the common law as to plaintiffs' right to air, light, and ventilation over defendants' property.
[7] Moreover, this computation does not include the increased dimensions permitted for a building directly across from a public park as the instant properties are. See Chicago Municipal Code 1931, ch. 34, par. 1879(e).