SPRINGFIELD MARINE BANK, Trustee, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.

(No. 12535; ▮▮▮▮▮▮▮▮

Fourth District—May 1, 1975.

Sorling, Catron, & Hardin, of Springfield (W. Joseph Gibbs, of counsel), for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton, Assistant Attorney General, of counsel), for respondent.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case involves many of the same facts and issues as *Springfield Marine Bank v. Pollution Control Board*, 27 Ill.App.3d 582 N.E.2d. Here petitioner, Springfield Marine Bank, is also serving as a trustee of an Illinois land trust with the beneficial interest in an entity which plats,

subdivides, and improves lots to be used for residential purposes and then sells the lots or builds on them. This beneficiary is Vredenburg Building Company (Vredenburgh). Here, too, a petition was filed with the Pollution Control Board (P.C.B.) for a variance from the same sewer-tap ban. On December 13, 1973, the petition was denied with one member of the board dissenting, and petitioner has appealed.

The land for which the variance was sought was to be developed as the Eleventh Plat of Sherwood Subdivision and was also located in the southwest part of the city of Springfield. It was adjacent to land on which 10 other Sherwood subdivisions had been developed by the same entity. The land was purchased on November 22, 1971, for a total cost of $209,270. The evidence indicated that the developers intended to dedicate a portion of the premises to the Springfield Park District and that the cost of the land to be developed for homes was $166,755.

On July 12, 1972, the ban on new connections to the sanitary sewers in the area was imposed by the Environmental Protection Agency (E.P.A.) because of sewage overflow problems in the southwest Springfield area. The August 29, 1972, letter from the E.P.A. to the Springfield Sanitary District referred to in the related case also came to the attention of officers of Vredenburgh and the testimony was that they too believed that the ban would soon be lifted. Abraham Loudermilk, an employee of E.P.A., testified that in his opinion the letter was intended to lift the ban when the new treatment plant mentioned in the letter was completed and in operation.

On December 22, 1972, E.P.A. granted Vredenburgh a conditional permit to construct the subdivision sewers but not to use them. On April 13, 1973, E.P.A. denied petitioner's request for an operating permit. The instant petition for variance was then filed on August 20, 1973. The testimony indicated that Vredenburgh had originally planned 103 lots for the subdivision but that only 80 of the lots would be connected to the sanitary sewer to which the ban had been applied. Petitioner announced that it would be satisfied if it were allowed to make connection to one-third of these lots each year for 3 years.

Petitioner also contends that P.C.B. is estopped to deny the variance because of the letter and the conditional permit. In this case there was also evidence that an agent of Vredenburgh signed an application for the conditional permit which stated in part:

> "The agency will not grant permission to operate until: (a) receiving sanitary district, municipality or other owner notifies the agency that it has completed construction of the additional or upgraded facilities that serve as the basis of the grant of this limited permit and that the additional facilities have been placed in operation and are operating as designed; and (b) the agency

has inspected the facilities in operation and notifies the owner in writing that the facilities are actually operating successfully as designed.

\* \* \*

This conditional installation permit is issued solely as an accommodation to the applicant. The agency makes no promise, representation, or statement as to when the improved facilities will be completed and in operation and the agency cannot guarantee that the facilities will actually perform as designed."

■■ The evidence was that the "additional facilities" consisted of a new treatment plant on the east side of the city that would not receive sewage from the area where the evidence of flooding occurred. That sewage went to the main plant, and the new plant was designed to receive some sewage going to the main plant and thus enable it to better service the flooded area. There was evidence that overflow continued after the new plant went into operation. We reject the claim of estoppel for the reasons stated in the related case. Similarly we reject petitioner's contention here that the denial of the variance after granting such relief to the Viking project was an abuse of discretion.

We consider the hardship on Vredenburgh to be more substantial than the opinion of P.C.B. would indicate. In addition to the original cost of the land, they had expended some $2340 in engineering fees, and testimony indicated that they had inventoried some "half million dollars" in building materials. While the Board is correct in pointing out that hardship could be mitigated by liquidating the inventory, some loss would be incurred in doing so. In any event most subdividers with capital invested, loans to pay at interest rates of 9½% and manpower and equipment tied up are substantially hurt when projects are delayed.

On the other hand, the evidence here too was that the public was undergoing substantial hardship by sewer overflow in times of heavy rain and that discharge of additional sewage into the sewer to which connection was sought would aggravate that problem. Here, too, the aggravation resulting from granting one variance would be small but the governmental agency must draw a line somewhere.

■■ The finding of the Board, implicit in its ruling that the damage to the public if the variance were granted would exceed the hardship to petitioner occasioned by its refusal, is not contrary to the manifest weight of the evidence.

The ruling of the Pollution Control Board denying petitioner's request for a variance is affirmed.

Affirmed.

SIMKINS, P. J., and TRAPP, J., concur.