163 N.J. Super. 376 (1978)
394 A.2d 1233
LOM-RAN CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1978.
Decided October 30, 1978.
*379 Before Judges LORA and MICHELS.
Mr. Terence J. Wronko argued the cause for appellant (Messrs. Nuzzo and Nuzzo, P.C., attorneys).
Mr. Richard M. Hluchan, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
*380 The opinion of the court was delivered by LORA, P.J.A.D.
Lom-Ran Corporation appeals from a determination of the Department of Environmental Protection (DEP) refusing to exempt certain property in Little Falls Township from a sewer connection ban imposed in 1973. Appellant, a construction firm, contracted to buy a residential lot owned by one Randolph Swenson in order to build a house upon it, the deal being contingent upon the obtaining of the necessary building approvals.
The record shows that in 1970 the Fallscal Corporation developed a residential community on a tract of land in Little Falls Township. The community included a townhouse project, and in addition the corporation developed 26 lots, which were to be sold to individual purchasers or builders who wished to construct homes upon them. Fallscal received subdivision approval from the township on August 18, 1970 and secured site plan approval for the townhouse project.
In 1971 Randolph E. Swenson purchased lot 5, block 237, from Fallscal for $18,500. Swenson intended to build a single-family dwelling on the property, but found it impractical to do so because of difficult topographical features, specifically a rock formation and a 200-foot cliff in the rear. He thereupon moved to Florida. Fallscal sold the other 25 residential lots for $22,500 each.
On February 20, 1973 DEP imposed a sewer connection ban on Little Falls Township because the local sewage treatment plant was at or beyond its capacity and instructed the Township not to approve any further connections to the sewage system until it submitted a plan for improving its facilities. However, DEP added that:
In order to minimize the impact of these requirements upon commitments already in effect locally, exceptions will be made where building permits, final subdivision and site plan approvals have been granted prior to receipt of this letter. Additionally, consideration will be given to situations where hardship situations or other special circumstances may prevail which would warrant further exceptions to be made.
*381 On the date of the ban construction on 23 of the 26 lots sold by Fallscal had either commenced or been completed. On July 16, 1973 DEP granted exemptions from the sewer ban to two of the three remaining lots, leaving Swenson's lot as the only one of the 26 which was not exempted from the ban.
In 1976 Swenson entered into a contract with Lom-Ran Corporation to sell the property for $15,000, contingent upon receipt of necessary building approvals.
Appellant obtained a variance from setback requirements permitting construction of the proposed residence closer to the front of the lot because of the 200-foot vertical cliff in the back yard. However, the variance was conditioned upon appellant obtaining the exemption, and the building inspector refused to issue a building permit until DEP had granted such an exemption.
Accordingly, appellant, on behalf of itself and Swenson, filed an application for exemption. It was denied and appellant thereupon requested a hearing at which it argued (1) the ban did not apply to it because the parcel had been subdivided prior to its institution, (2) appellant suffered a severe personal hardship and (3) the standards for granting a hardship exemption were vague. In support of the hardship argument Swenson wrote a letter detailing the costs he had incurred, as follows: the $18,500 purchase price, $95 for searches, $95 for title insurance, $125 for an attorney fee, $375 for a topographic survey, $150 architect's fee and $3,129 in municipal taxes. In the same letter Swenson alleged that he had borrowed $15,000 from a bank for use in his business and hoped to use the proceeds of the sale to repay the loan. Lom-Ran, too, claimed a hardship because, after imposition of the ban, it had expended approximately $2,000 for borings, engineering, legal and architectural fees.
The hearing officer in his report recommended that the request for an exemption be denied. He concluded that the ban applied to appellant even though there had been subdivision and site plan approvals prior to imposition of the *382 ban, because N.J.A.C. 7:9-13.4(a)(1) required, in addition to such approvals, that the applicant prove that he had made substantial expenditures for improvements to the property in good faith reliance upon the approvals, and neither appellant nor Swenson had incurred any costs for improvements to the lot in question. With respect to their hardship argument, he concluded that neither Swenson nor appellant had suffered a "severe personal hardship which goes beyond the normal hardship suffered by any other property owner who is prevented from either developing or selling his property during the duration of the ban," as required by N.J.A.C. 7:9-13.4(a)(6). He further concluded that under the regulations, payment of real estate taxes and the cost of acquiring and maintaining property could not be considered grounds for an exemption.
By order dated July 5, 1977 the Acting Commissioner of the Department of Environmental Protection adopted the conclusions and recommendations of the hearing officer, and denied the requested exemption.
Appellant's contentions on appeal as set forth in its brief are as follows:
I The sewer connection ban was wrongfully imposed upon the appellants;
II The application of the sewer moratorium to the appellant by the DEP wrongfully and retroactively deprives appellant of the value of his property;
III The appellant satisfied the hardship requirements of the DEP regulation;
IV The DEP hardship exemption regulation is vague and therefore invalid;
V The DEP application of the hardship exemption regulation violates the equal protection clause of the Federal and State Constitution.
Appellant first contends that the original developer obtained site plan and subdivision approval prior to the imposition of the ban and hence the ban does not apply to this property. It argues that under N.J.A.C. 7:9-13.4(a)
*383 (1) DEP should exempt all subdivided property and that Swenson purchased the property on the reasonable assumption that he could build upon it.
N.J.A.C. 7:9-13.1 et seq. empowers respondent DEP to impose sewerage connection bans and to order municipalities to cease further connections with their sewer systems. Specifically, it may issue an administrative order
* * * [r]equiring a municipality, corporation, sewerage authority or other governmental body to cease further connections and/or extensions to a sewerage system when the Division has determined that the sewerage system is receiving * * * loading in excess of its design capacity, and is thereby allowing the waters of the State to receive inadequately treated sewage * * * [N.J.A.C. 7:9-13.3(a)(1)]
Respondent may also require
* * * a municipality within the service area to cease permitting any building projects (by way of subdivision approval, site plan approval, building permits or other forms of approval) which would result in the addition of flow into the sewerage system, except in cases where the Division has specifically granted prior written approval [N.J.A.C. 7:9-13.3(a)(2)]
These regulations were issued pursuant to N.J.S.A. 58:12-2 and 58:12-3.[1]
N.J.A.C. 7:9-13.4(a)(1), upon which appellant relies, states:
If the municipality, prior to receipt of the order imposing the ban has issued a building permit or other type of approval, the construction covered by such permit or approval may be exempt. The applicant must show that, in good faith reliance upon the permit or approval, he has made substantial expenditures for improvements to the property. The burden of proof is on the applicant. *384 It is clear that issuance of a building permit or other type of approval is only one element to be proven by the applicant. In addition to showing the issuance of an approval, the applicant must also establish that he has made substantial expenditures for improvements in good faith reliance upon the approval. Here the record clearly establishes that prior to imposition of the ban no one had obtained a building permit or other approval covering any construction on the lot in issue. As a matter of fact, a building permit was not sought until some three years after imposition of the ban. Then too, neither Swenson nor appellant made any, let alone substantial, expenditures for improvement to the property albeit Fallscal had constructed streets, curbs, sidewalks, sanitary sewer lines, and installed gas, electric and telephone lines in connection with its overall subdivision approval for the community.
As we stated in an unreported opinion in a similar case in which we upheld a denial of an exemption under N.J.A.C. 7:9-13.4(a)(1):
It is axiomatic that "the safeguarding of the public health has long been considered an essential governmental function within the police power of the State." State v. Owens-Corning Fiberglass Corp., 100 N.J. Super. 366, 381 (App. Div. 1968). See West Caldwell v. Caldwell, 26 N.J. 9, 30 (1965). Since a pollution control act has the clear purpose of protecting the public health and welfare, such an "act is entitled to a liberal construction for the accomplishment of its obvious beneficent objective." State v. Owens-Corning Fiberglass Corp., supra, 100 N.J. Super. at 382. See State, Morford v. Board of Health, 61 N.J.L. 386, 389 (Sup. Ct. 1898). As explained in 3 Sutherland, Statutory Construction (4 ed. 1974), § 71.02 at 313:
* * * Since a very early time the courts have been committed to the doctrine of giving statutes which are enacted for the protection and preservation of public health an extremely liberal construction for the accomplishment and maximization of their beneficent objectives. The public and social purposes served by such legislation greatly exceed the inconvenience and hardship imposed upon the individual, and therefore the former is given greater emphasis in the problems of interpretation. Therefore the courts are inclined to give health statutes a liberal interpretation despite fact that such statutes may be penal in nature and frequently may impose criminal penalties.
*385 As to the fact that sewers and sewage specifically are matters within the public health that are subject to such regulation and interpretation, see 39A C.J.S. Health & Environment § 45 at 484.
The Department therefore has the duty to prevent pollution and wide latitude in protecting the public health by controlling pollution. As a result, pursuant to N.J.A.C. 7:9-13.4(a)(1), an applicant will qualify for an exemption only where it has met its heavy burden of showing that it has made substantial expenditures for improvements to the property in good faith reliance upon the permit or approval that the municipality has issued. It is clear that N.J.A.C. 7:9-13.4 mandates that the developer must have acted upon an issued permit and not in anticipation of it and that the developer is taking a chance as to any expenditures that it makes prior to the issuance of a permit. Cf. Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420, 434 (App. Div. 1961).
All of the expenditures incurred by appellant were made prior to the issuance of a building permit and after the ban was announced and thus they were clearly not within the comprehension of N.J.A.C. 7:9-13.4(a)(1). As for Swenson, although he incurred expenses prior to imposition of the ban, and allegedly in reliance on the subdivision approval, he expended nothing for improvements, as required by the regulation.
Appellant next contends that the sewer ban constitutes a governmental taking of his property without compensation since the ban renders the property virtually useless. It is our view that the contention is without merit and that the ban constitutes a valid exercise of the State's police power to protect the health and welfare of its inhabitants. The State has no intention of taking appellant's property for use by the State, and the ban is a temporary measure which will be lifted when the Little Falls Sewage Treatment Plant is upgraded and expanded so it can handle the load.
It is settled law that a proper exercise of the police power is without the limitations and restrictions of the constitutional provisions applying to the exercise of eminent domain. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Bayshore *386 Sew. Co. v. Dep't of Env., N.J., 122 N.J. Super. 184, 203-205 (Ch. Div. 1973), aff'd o.b. 131 N.J. Super. 37 (1974).
* * * Reasonable use restrictions in the exercise of the police power pursuant to the Constitution do not constitute the taking of the property for public use within the intendment of the constitutional mandate for compensation in such cases. All property is held in subordination to the police power; and the correlative restrictions upon individual rights  either of person or of property  are incidents of the social order, deemed a negligible loss compared with the resultant advantages of the community as a whole, if not, indeed, fully recompensed by the common benefits.

* * * * * * * *
[Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 206 (1949)]
However, excessive governmental regulation under the police power may be so onerous as to constitute a taking which requires compensation; how much is too much depends upon the facts of each case. Goldblatt, supra, 369 U.S. at 594, 80 S.Ct. 987; Morris Cty. Land, etc. v. Parsippany-Troy Hills Tp., 40 N.J. 539, 554-559 (1963).
In Cappture Realty Corp. v. Elmwood Pk. Bd. of Adj., 126 N.J. Super. 200 (Law Div. 1973), aff'd 133 N.J. Super. 216 (App. Div. 1975), we sustained a moratorium against construction in a flood prone or flood plain area pending completion of various flood control measures within the two-year period indicated by the trial judge, holding such moratorium constituted an appropriate exercise of police and zoning power and did not involve deprivation of property without just compensation. We were advised at oral argument in the instant case that plans have been formulated, applications for funding made and that the required expansion of facilities is perhaps two years away from completion. See N.J.A.C. 7:9-13.3(e).
Hardship exemptions from sewer connection bans are provided for by N.J.A.C. 7:9-13.4(a)(6), which states: *387 If an applicant can provide documentation that through no fault of his own and because of the existence of the ban, he has suffered or will suffer some severe personal hardship which goes beyond the normal hardship caused by his inability to use his land during the duration of the ban, an exemption may be granted. The payment of property taxes will not be considered a severe hardship. The application [sic] must prove to the satisfaction of the Division that he will suffer irreparable harm unless relief is granted and that there is no other method by which the applicant could alleviate or mitigate his hardship. The burden of proof is on the applicant.
Lom-Ran contends that the facts mandate a finding of severe personal hardship. It asserts that Swenson purchased the property believing that he could build on it; DEP granted hardship exemptions to other property owners in Little Falls; Swenson must sell the lot for less than he paid for it and needs the money to repay a business loan; he incurred various charges, such as search fees, title insurance and attorney's fees at the time he purchased the property and he has paid and will pay property taxes; and Lom-Ran paid out over $2,000 for engineering, legal and architect's fees.
However, these expenditures, whether substantial or not, were incurred prior to the issuance of a building permit and represent a risk taken by Swenson and the appellant. Such expenses were in anticipation of, and not in reliance on, a permit. Accordingly, the Commissioner properly found that they should not be considered for purposes of satisfying the requirements of the regulation. Moreover, Swenson's inability to build on the lot does not go beyond the normal hardship caused by anyone's inability to use his land during the duration of the ban. Swenson's need for the money to be derived from the sale of the property and the payment of real estate taxes do not constitute "irreparable harm" or a "severe hardship" within the contemplation of the regulation.
We also note that Swenson purchased the lot from a plat as being on the end of a cul-de-sac and when the roads were put in by the developer, the fall-off of the land then *388 became apparent. Concededly, the market value of the lot has gone down not only because of the sewer connection ban but also due to the 200 foot fall-off in its rear and the great amount of rock on it.
Appellant also argues that the denial of exemption is unjustified because of the infinitesimal impact that the residence to be constructed on the lot in question would have upon the entire Little Falls System. While N.J.A.C. 7:9-13.4(a) permits the Division in considering exemptions to weigh the potential adverse effects on the environment, the applicant must nevertheless meet the requirements of N.J.A.C. 7:9-13.4(a)(1), which it has not done. Moreover, as stated in Springfield Marine Bank v. Pollution Control Bd., 27 Ill. App.3d 582, 587, 327 N.E.2d 486, 491 (App. Ct. 1975), where the trustee for a land trust appealed from the Pollution Control Board's denial of a variance from a ban on further connections of sanitary drainage outlets to a sewer,
The evidence is thus undisputed that the amount of aggravation to the overflow problem that would result from allowance of this one variance would be very small. If this variance were granted, however, other developers similarly situated would also have to be granted variances. In LaSalle National Bank v. City of Chicago, 6 Ill.2d 22, 31, 126 N.E.2d 643, 647, in discussing the problem of drawing boundary lines for zoning areas, the court stated, "As often noted, zoning lines must begin and end somewhere and the decision of each case must depend on its particular facts." Here too, lines must be drawn somewhere even though such successive increase in the load in a sewer may have minimal effect.
Accord, Springfield Marine Bank v. Pollution Control Bd., 27 Ill. App.3d 964, 966, 327 N.E.2d 492, 494 (App. Ct. 1975).
Our review of the record establishes that the remaining contentions of the appellant are clearly without merit, R. 2:11-3(e)(1)(D)(E), and that the order of the Acting Commissioner of the Department of Environmental Protection *389 denying an exemption is supported by sufficient credible evidence present in the record. State v. Johnson, 42 N.J. 146, 162 (1964).
NOTES
[1] These statutes were repealed by the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., L. 1977, c. 74. However, § 13 of the new act provides that it "shall not affect, impair or invalidate any action or proceeding, civil or criminal, brought by or against the department, pending on the effective date of this act * * *."