In the Matter of HILDEMANN INDUSTRIES, INC., a corporation of the State of New Jersey; All Traffic Service, Inc., a corporation of the State of New Jersey; Newark Tank Wash, Inc., a corporation of the State of New Jersey; Amtruk Leasing, Inc., a corporation of the State of Delaware; and Amtruk, Inc., a corporation of the State of New Jersey, Debtors.

HILDEMANN INDUSTRIES, INC., a corporation of the State of New Jersey; All Traffic Service, Inc., a corporation of the State of New Jersey; Newark Tank Wash, Inc., a corporation of the State of New Jersey; Amtruk Transport, Inc., a corporation of the State of New Jersey; Amtruk Leasing, Inc., a corporation of the State of Delaware; and Amtruk, Inc., a corporation of the State of New Jersey, Debtors-in-Possession, Plaintiffs,

v.

The STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, the United States Environmental Protection Agency, Peter D. Brown, Robert E. Hughey, Commissioner, State of New Jersey Department of Environmental Protection, and Other Unknown State Officials of the State of New Jersey Department of Environmental Protection, Defendants.

Bankruptcy No. 83–0768.

United States Bankruptcy Court,
D. New Jersey.

Dec. 17, 1984.

510

Karen Gianelli, Crummy, Del Deo, Griffinger & Vecchione, Newark, N.J., for debtor.

Howard Epstein, Trenton, N.J., Irwin Kimmelman, Atty. Gen. of N.J., for State of N.J.

William Halsch, Newark, N.J., W. Hunt Dumont, U.S. Atty., for United States.

## OPINION

D. JOSEPH DE VITO, Bankruptcy Judge.

The issues to be decided in the above entitled matter come before the Court on order to show cause filed by plaintiff debtors herein. Those issues relate directly or indirectly to an order directing turnover of certain of plaintiffs' property to the plaintiffs, which property, located at 335 Raymond Boulevard, Newark, New Jersey, had been seized by the defendants State of New Jersey, Department of Environmental Protection (N.J.D.E.P.), and the United States Environmental Protection Agency (E.P.A.) because of dioxin contamination. Said order was rendered October 26, 1983, and memorialized in the consent order of January 5, 1984.[1] It is the alleged violation of that order which, in the opinion of counsel for the plaintiffs, now warrants a contempt citation against the defendants. It appears that the gravamen of plaintiffs' charge against the EPA is that for a short period of time from October 26, 1983 to November 17, 1983, the EPA was in possession of duplicate keys to the lock on the Hildemann property. On November 17, 1983, Andrew L. Praschak, Esq., attorney for the EPA, returned the duplicate keys to plaintiffs' attorneys with a letter stating: "That EPA will not access your client's property without first receiving the permis-

---

1. The consent order of January 5, 1984 executed by representatives of the N.J. Dept. of Environmental Protection and the Environmental Protection Agency states in its entirety: "That defendants The State of New Jersey, Department of Environmental Protection and the United States Environmental Protection Agency be and the same are hereby directed to immediately vacate and quit the property of plaintiffs located at 335 Raymond Blvd., Newark, New Jersey, and to turn over possession of said property to plaintiffs."

sion of the appropriate Bankruptcy Court or the permission of your client."

Inasmuch as it is not contended that the EPA has, in fact, entered upon or through the Hildemann property, the alleged violation of the January 5, 1984 consent order appears minimal at best, and that alleged violation has since been rectified by a surrender of the keys in question. *De minimis non curat lex.*

Pursuant to an agreement memorialized in a letter of April 26, 1984, both N.J.D. E.P. and E.P.A. were given limited and temporary right of access to and through the Hildemann property to perform certain sample testing and make minor repairs within an estimated one to two week time frame. By letter of July 2, 1984, counsel for the plaintiffs refused to extend the time period to encompass further action sought by N.J.D.E.P. including, but not limited to, tarping and graveling the Hildemann property so as to contain the spread of dioxin, as had already been done within the area known as the Morris Canal Bed, and fencing off the Hildemann site. The EPA response, as aforenoted, was to remove itself from the property, and not to return. In direct contrast, Robert E. Hughey, Commissioner of N.J.D.E.P., issued administrative order No. EO 40 D–4 on July 24, 1984, pursuant to the police power of the State

"... order[ing] and direct[ing] that representatives and/or agents of the Department and the United States Environmental Protection Agency are hereby authorized to enter and use the premises at 335 Raymond Blvd. in the City of Newark for the purpose of implementing necessary remedial actions to contain or remove the dioxin and minimize public exposure thereto. This order shall take effect immediately."

Pursuant to the above administrative order, N.J.D.E.P. not only tarped the heavily contaminated Morris Canal Bed area, cordoning it off with a chain link fence, but removed the dioxin from a small portion of the Hildemann property adjoining the fence post. The Government speculates that the area in question may have become contam-inated as a result of toxic chemical soil migration; counsel for the plaintiffs suggests, to the contrary, that the Government may somehow have been responsible for the dioxin found on the Hildemann property. The record is bereft of any factual data to enable this Court to make a determination with respect to that issue. Such determination, if made, would necessarily be bottomed on sheer speculation. Counsel for N.J.D.E.P. intimated that removal of dioxin from the small fenced-in area of the Hildemann property is but an interim stabilization that may require further action in the future. See *Transcript* of November 5, 1984, pages 26 to 27 and 41 to 42.

It appears that Hildemann Industries, their servants, employees and agents, have not been barred from the subject property, and that some, perhaps, interim removal of dioxin contamination has occurred with respect to both that portion of the Hildemann property within the fenced-in area, embracing most of subject property, and that relatively small portion of the property remaining beyond the fenced-in area. It may additionally be noted that some findings of dioxin of one part per million may still exist outside the area surrounded by a fence purchased and erected by N.J.D.E.P. In view of counsel's admission that N.J.D.E.P. is no longer operating within the fenced-in portion of the Hildemann property and that, to the best of its knowledge, the dioxin has been removed from that area, N.J.D. E.P. should return the key to the padlock on the fence gate to the debtors.

The real issue in contention here, which the Court believes has precipitated plaintiffs' order to show cause, relates to the administrative order issued by Commissioner Hughey on July 24, 1984, without notice or an opportunity to be heard afforded to the plaintiffs, and which does not contain any time limitations. Moreover, the highly tentative remarks of the New Jersey Deputy Attorney General (Howard B. Epstein, Esq.), at the hearing on September 5, 1984 (see *Transcript*, pages 44 to 48, generally), suggest that N.J.D.E.P.'s presence in one form or another on the subject Hildemann

property may well develop into a recurring necessity.

As between the interests of a contaminating industry and those of N.J.D.E.P. representing the public, legislative trends since 1976 have strongly favored the latter. See *e.g.,* the *Spill Compensation and Control Act, N.J.S.A.* 58:10–23.11, *et seq.* (1976); the *Major Hazardous Waste Facilities Siting Act, N.J.S.A.* 13:1E–49, *et seq.;* comprehensive regulations governing hazardous waste, *N.J.A.C.* 7:26–1.1, *et seq.,* adopted pursuant to the *Solid Waste Management Act, N.J.S.A.* 13:1E–1, *et seq.;* the *Environmental Cleanup Responsibility Act* (ECRA), *N.J.S.A.* 13:1K–6, *et seq.;* and the *Worker and Community Right to Know Act, N.J.S.A.* 34:5A–1, *et seq.*

In ECRA, the Legislature addressed the problem of the bankrupt industrial establishment intent upon selling contaminated land. ECRA places stringent requirements upon owners and operators of any "industrial establishment" proposing the "closing, terminating or transferring (of) operations," including those of a debtor involved in a bankruptcy proceeding. With limited exception, any business which "involve(s) the generation, manufacture, refining, transportation, treatment, storage, handling or disposal" of hazardous substances is affected; *N.J.S.A.* 13:1K–8.d to 8.e; *N.J. A.C.* 7:1–3.3. Such an establishment must submit to the N.J.D.E.P. either a cleanup plan or a "negative declaration" indicating there are no wastes, or there has been an effective cleanup.

Penalty provisions dramatize the very serious legislative intent to give N.J.D.E.P. the power to act in the situation where an industrial establishment seeks to transfer contaminated land. Penalties include voiding of the sale or transfer, *N.J.S.A.* 13:1K–13.b; *N.J.A.C.* 7:1–3.16. They include damages assessable even against officers and managing officials; *N.J.S.A.* 13:1K–13.c.

Since further information is necessary to determine whether the present situation fits squarely within ECRA, the foregoing is offered only as analogy and as a public policy consideration.

The difficulty perceived by this Court is that, under the guise of the police power of the State, N.J.D.E.P., acting pursuant to the aforementioned July 24, 1984 administrative order, may run afoul of the 5th Amendment's prohibition of deprivation of property without due process of law and the taking of private property without just compensation.

■ Plaintiffs' counsel suggests that the actions taken by N.J.D.E.P., as delineated above pursuant to such order, are contemptuous in that they violate both the automatic stay of 11 U.S.C. § 362[a] and the consent order of January 5, 1984. The first part of plaintiffs' contention cannot be sustained. The actions taken by N.J.D.E.P. fall squarely within the enforcement by a governmental unit of such governmental unit's police or regulatory power exception contained in Subsection [b][4]. See *Penn Terra, Ltd. v. Department of Environmental Resources,* Commonwealth of Pennsylvania, 733 F.2d 267, 274 (3d Cir. 1984).

It is axiomatic that the safeguarding of the public health has long been considered an essential governmental function within the police power of the State. *Lom-Ran Corp. v. Department of Environmental Protection,* 163 N.J.Super. 376, 384, 394 A.2d 1233, 1237 (App.Div.1978).

■ The second part of plaintiffs' contention that Commissioner Hughey's administrative order violates this Court's previously entered order of January 5, 1984, raises the possibility of a conflict between a duly rendered federal court order and an administrative order issued by the executive branch of the State of New Jersey. In reality, such conflict may be more illusory than real. 28 U.S.C. § 959[b] provides as follows:

Except as provided in § 1166 of Title 11, a Trustee, receiver or manager appointed in any cause pending in any Court of the United States, including a Debtor in possession, shall manage and operate the property in his possession as such Trus-

tee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

As the September 5, 1984 hearing indicates, N.J.D.E.P.'s recurring apprehension over continued dioxin contamination appears to be limited to the small area outside the fenced-in property. N.J.D.E.P.'s limited activities in that regard do not, in the opinion of this Court, rise to the level of contempt, especially in light of Section 959[b] of the Judicial Code, quoted above. However, because the issue here is an administrative fiat, justified, if at all, in terms of executive prerogative, the Court will consider the imposition of contempt sanctions against N.J. D.E.P. for any future activities it may undertake outside the fenced-in area without the express approval of this Court.

Submit an order in accordance with the above.